Williams, Administrator, vs. Williams and others.

*April 10 — September 19, 1882.*

Trusts and Trustees. *(1) Deposit of trust funds: when loss falls on depositor.*

Supreme Court. *(2) Limit of power to correct its own judgment.*

1. Where an administrator deposits, *in his own individual name,* funds of the estate in a bank which fails while holding such deposit, the loss is his own and not that of the estate; and this though he had no other funds in such bank, and informed its officers, at the time of making the deposit, that the funds were held by him in trust. A remark by Paine, J., in *School District v. Zink,* 25 Wis., 636, so far as inconsistent with this view, overruled.

2. This court has no power, at a subsequent term, to correct its judgment in respect to costs, where that subject was considered, and the judgment was entered by the clerk in accordance with the directions of the court, unless such power was carried forward by a motion made during the term at which the judgment was rendered. *Pringle v. Dunn,* 39 Wis., 435.

APPEAL from the Circuit Court for *Rock* County.

The plaintiff, *Harry C. Williams,* as administrator of the estate of Stephen Williams, deceased, appealed to the circuit court for Walworth county from an order of the county court of that county disallowing, among other items in his account against said estate, a credit of $665.70 on account of moneys of the estate deposited in bank and lost by the failure of the bank. The cause was subsequently removed to and tried by the circuit court for Rock county. That court found as facts that on the 10th of July, 1875, the plaintiff had in his possession, as such administrator, $665.70, and deposited the same, for safe-keeping and greater security and convenience, in the Corn Exchange Bank of Waupun, near which he resided, taking a certificate of deposit in his own name for the amount; that the bank was at the time in good credit and repute, as safe, solvent, and in all respects trustworthy; that in making the deposit the administrator informed the teller, who received the money and gave the certificate, that the moneys were trust funds, and did not belong to him individually, but did not inform him to whom the money did in fact belong, nor give any direction as to the deposit being made or the certificate issued in any other than his individual name; that said administrator had previously had money on deposit to his individual credit, but at the time in question had none; that the $665.70 was at the time in fact placed to his individual credit on the books of the bank, and so remained; that at the time of making the deposit he took the certificate and retained the same; and that in August, 1875, the bank failed, and the amount became wholly lost and the certificate wholly worthless, except as to a small dividend upon the assets in the hands of the receiver. On these facts it held that the administrator was not entitled to credit for the amount of such loss, but must fully account for and pay over to the estate the amount of

the money so deposited.  From a judgment in accordance with this conclusion, the administrator appealed.

For the appellant there was a brief by *Bennett & Sale*, and oral argument by *Mr. Bennett:*

The money being deposited by the administrator in a bank of general deposit and of good credit, he is not liable for the loss sustained by the failure of the bank.  *Adams v. Claxton*, 6 Ves. Jr., 226; *Knight v. Lord Plimouth*, 3 Atk., 480; *Jones v. Lewis*, 2 Ves. Sen., 240; *Rowth v. Howell*, 3 Ves. Jr., 565; *Belchier v. Parsons*, 1 Ambl., 219; *Matthews v. Brise*, 6 Beav., 239; *Massey v. Banner*, 4 Madd., 416, 417; 2 Story's Eq. Jur., § 1269, note 2; *Tebbs v. Carpenter*, 1 Madd., 290; *Clough v. Bond*, 3 Mylne & Cr., 490, 496; *Langford v. Gascoyne*, 11 Ves. Jr., 333; *Lord Shipbrook v. Lord Hinchinbrook*, id., 252; *Hanbury v. Kirkland*, 3 Sim., 265; *Broadhurst v. Balguy*, 1 Younge & C., 16, 18.  The true result of the best authorities seems to be, that when a trustee has acted with good faith and in the exercise of fair discretion, and in the same manner he would ordinarily do with his own property, he ought not to be held liable for loss of trust funds in his hands. 2 Story's Eq. Jur., § 1272; *Hart v. Ten Eyck*, 2 Johns. Ch., 76; *Litchfield v. White*, 7 N. Y., 438.  When the administrator first collected this money and put it in his pocket book, it was money belonging to the estate, though in fact there was nothing to show it except his own knowledge of the fact.  It would remain the money of the estate though he had his own, by itself, not mingled with it, in the same pocket book.  And when he deposited it in the bank, informing the teller that it was trust funds belonging to the estate, it still remained trust funds, and could not legally be taken from the bank by garnishment or any other process issued on a judgment against *H. C. Williams*.  He obtained no credit with the bank or with any one else by such deposit. It is entirely unlike the case of *Wren v. Kirton*, 11 Ves. Jr.,

377, where a receiver was charged with the loss of trust funds by the failure of a bank because he had made "remittances to his *own credit* and *use.*" In the case of *School District v. First Nat. Bank*, 102 Mass., 174, it was held that if a "trustee deposits trust moneys in a bank to his *own private account*, without giving any *notice* that it is not his private property, he thereby converts it to his own use, so that the bank, in the absence of any notice that it is not his private property, may apply it as such;" and the bank did give him credit on his overdrawn account. This could not have been done had the trustee, like *Mr. Williams*, given notice at the time of making the deposit that the funds belonged to the district. And see *Chambersburg Saving Fund Association's Appeal*, 76 Pa. St., 203; *Thompson v. Brown*, 4 Johns. Ch., 619; *Brown v. Campbell*, Hopk. Ch., 233; *Pierson v. Thompson*, 1 Edw. Ch., 212.

For the respondents there was a brief by *H. S. Winsor*, and oral argument by *S. U. Pinney.* To show the liability of trustees on the deposit and payment of money in a bank in their own names and not in the name of the trust, and that such liability will not depend upon the good faith, prudence or judgment with which the trustee may have apparently acted, they cited 1 Perry on Trusts, 443–463; *Wren v. Kirton*, 11 Ves. Jr., 377; *Fletcher v. Walker*, 3 Madd., 73; *Macdonnell v. Harding*, 7 Sim., 178; *Matthews v. Brise*, 6 Beav., 239; *Massey v. Banner*, 1 Jacob & W., 241; *Pennell v. Deffell*, 4 De G., McN. & G., 372; *School District v. First Nat. Bank*, 102 Mass., 174; *Mason v. Whitthorne*, 2 Coldw., 242; *Rocke v. Hart*, 11 Ves., 58; *Freeman v. Fairlie*, 3 Merivale, 39; *Jenkins v. Walter*, 8 Gill & J., 218; *Lukens's Appeal*, 7 Watts & S., 48; *Stanley's Appeal*, 8 Pa. St., 431; *Royer's Appeal*, 11 id., 36; Tiff. & Bull. on Trusts, etc., 583; *Comm. v. McAlister*, 28 Pa. St., 480; *S. C.*, 30 id., 536; *Matter of Stafford*, 11 Barb., 353; *Baskin v. Baskin*, 4 Lans., 90.

The following opinion was filed May 10, 1882:

CASSODAY, J. The very small portion of the argument heard, and a hasty reading of the printed briefs, strongly impressed the writer with the justice and equity of the appellant's theory; but my brethren, who heard all the arguments, are clearly of the opinion that the findings of the circuit court are in accordance with the evidence, and that the law applicable thereto rigidly holds the administrator accountable for the amount of the deposit in question. A very careful examination of the authorities induces me to acquiesce in their judgment. Undoubtedly the general rule is that trustees are liable only for good faith and common prudence, and that if a loss happens to a trust fund, in relation to which they have exhibited this care and prudence, they may be allowed for the loss in their accounts. This is abundantly shown by the authorities cited by the able counsel for the appellant. But here the trust fund was not left with the bank for safe keeping, and to be preserved in kind as a special deposit, but as a deposit to the credit of the depositor, and the amount of which was " payable to the order " of the depositor " *in currency* on the return of " the "certificate properly indorsed." Thus it is plain that the identical money deposited was not to be returned, but the amount of it was to be paid " in currency " on presentation of the certificate properly indorsed. In other words, the depositor parted with the money for the general use of the bank, and took from the latter its obligation to repay a like amount in currency when required as stated. The authorities seem to hold, and it would probably be conceded, that the *cestui que trust* of this fund could have held the bank liable as against the personal representatives, creditors or legatees of the depositor. But the question here is, whether the depositor is released from liability to his *cestui que trust* by reason of such deposit and the subsequent failure of the bank?

The earliest case cited is *Knight v. Lord Plimouth*, 3 Atkyns, 480 *(S. C.*, 1 Dickens, 120), decided by Lord Chancellor HARDWICKE in 1747, where it was held that " where a receiver pays money to a tradesman, and°takes bills for the sum, if he was in credit at the time, though he fails soon after, it shall not affect the receiver." It does not appear from the report of that case whether the deposit was made by the receiver *as receiver* or as an individual.

In *Wren v. Kirton*, 11 Ves. Jr., 377, Lord Chancellor ELDON said: " In *Knight v. Lord Plimouth*, I apprehend, the deposit with the country banker was to the account of the receiver *as receiver;* not to his individual account." And subsequently, in the same case, he said: " I should not much fear to contradict that case of *Knight v. Lord Plimouth*, upon what has been done by later authorities, if it is as represented; for nothing is more dangerous. . . . If he goes to a responsible banker, and gets a bill upon a responsible house in London, in his favor *as receiver*, that bill, so ear-marked, would be specific assets to the credit of the trust property." And so, in the case last cited, he held the " receiver charged with a loss by the failure of the banker; having made the remittances to his own credit and use, and not to a separate account for the trust." The same rule was followed by Lord Chancellor BROUGHAM in *Salway v. Salway*, 2 Russell & Mylne, 215, subsequently affirmed by the House of Lords, id., 751. See *White v. Baugh*, 3 C. & F., 44. It is true that *Knight v. Lord Plimouth* has frequently been referred to in other cases without such discrimination *( Rowth v. Howell*, 3 Ves. Jr., 566; *Lovell v. Minot*, 20 Pick., 119; *U. S. v. Thomas*, 15 Wall., 343; *Seawell v. Greenway*, 22 Texas, 697); but the distinction thus made by Lords ELDON and BROUGHAM seems to be well supported by authority. See *Massey v. Banner*, 4 Madd., 413; *Tebbs v. Carpenter*, 1 Madd., 290; *Matthews v. Brise*, 6 Beav. 239.

In holding the trustee liable in the last case cited, the

learned Master of the Rolls lays stress on the fact that the exchequer bills "remained undistinguished" as trust property in the hands of the broker, and indicates that if he would have escaped liability he should have distinguished them as such trust property. To the same effect is *Massey v. Banner*, 1 Jacob & W., 248, where Lord ELDON said: "If an assignee pays money into his banker's hands as money belonging to the estate, and the banker fails, the assignee is undoubtedly clear from the loss; but if, instead of distinguishing it, he pays it all into his own account, then it is his account there; there is nothing like a declaration of trust of it, and it is familiar to consider him as having it in the banker's hands for himself, making him liable for it, etc. . . . I cannot doubt that this principle has been acted on with trustees and executors, who are equally gratuitous agents with this defendant."

In *Robinson v. Ward*, 2 Car. & Payne, 60, ABBOTT, C. J. (Lord TENTERDEN), speaking of the method by which the agent might have escaped liability, said: "The defendant should have paid this money into a banker's hands by opening a new account in his own name, 'for the credit of Robinson's estate,' and so ear-mark the money as belonging to that estate; then it would have been kept separate." See also *Macdonnell v. Harding*, 7 Simon, 178; *Hammon v. Cottle*, 6 Serg. & R., 290; *Cartmell v. Allard*, 7 Bush, 482; *Bartlett v. Hamilton*, 46 Me., 435.

In *Norris v. Hero*, 22 La. Ann., 605, it was held that "an agent who, when it becomes his duty to deposit in bank the moneys of his principal, fails to make the deposit in the name of his principal, becomes personally liable for the amount. In such a case the agent will not be permitted to urge the failure of the bank after the deposit was made, and throw the loss on the principal." To the same effect is *Mason v. Whitthorne*, 2 Coldwell (Tenn.), 242. The rule would seem to be imperative, that where "an administrator or trustee

deposits trust funds in his own name in a bank or other insti-
tution, which fails, the loss will fall upon him." *Common-
wealth v. McAlister*, 28 Pa. St., 480; *S. C.*, 30 Pa. St., 536.
In the opinion of the court in the last case, PORTER, J., said:
" If he [the trustee] undertakes to make a deposit in a bank-
ing institution, the entry must go down on the books of the
institution, in such terms as not to be misunderstood, that
they are the funds of the specific trust to which they belong.
He cannot so enter them as to call them his own to-day, if
they are good, and to-morrow, if bad, ascribe them to the
estate, or shift them in an emergency from one estate to an-
other; or, by the deposit, secure the discount of his own
note, and have the deposit snatched at by the bank if the
note be not paid, or attached by a creditor as the depositor's
individual property. . . . No matter what he intends to
do, or what the cashier or clerk may think he is doing, the
deposit must wear the impress of the trust, or he cannot,
when brought to account, call it trust property." See *Bas-
kin v. Baskin*, 4 Lansing, 90.

Following in the line of the English cases, in *Jenkins v.
Walter*, 8 Gill & J., 218, " where a guardian had received a
sum of money belonging to his ward, and on the day of its
receipt had deposited it in a banking institution then in good
credit, but which subsequently failed, and taken a certificate
therefor payable to himself or order, it was held that the loss
resulting from the failure of the bank should fall upon him,
though on the day of the deposit, by indorsement on the
certificate, he declared it to be the property of his ward, and
placed in bank for his benefit." So Mr. Perry, on the
strength of some of the English cases cited, says: " If money
is to be transmitted to a distant place, a trustee may do so
through the medium of a responsible bank, or he may take
bills from persons of undoubted credit, payable at the place
where the money is to be sent; but the bills must be taken

to him *as trustee*. If he neglects these precautions he will be responsible for any loss." Section 406.

It is true that in some of the cases cited the trustee had at the time of making the deposit a credit to his individual account at the bank, and such deposit was credited to him individually in the same account. But the test is not so much the keeping of a separate account at the bank, as it is the parting with, and hence the losing of the identity of, the trust fund, and having in lieu thereof no obligation, contract or account upon which is impressed the equitable ownership of the trust. Had this administrator retained these moneys in his own possession, and mingled them with his own funds so as to lose their identity, and the whole had been lost without his fault, yet we apprehend he would have been liable. *Shoemaker v. Hinze*, 53 Wis., 116. Here the fact that he delivered the moneys to the bank, and thus allowed them to be mingled with other funds, destroyed their identity as completely as though he had first mingled them with an equal amount of his own moneys, and then deposited the whole in bulk. The deposit, therefore, put an end to the identity of the funds deposited, and the certificate was simply an agreement, taken in exchange for the money, to repay a like amount in currency upon the conditions named. Beyond question the certificate was negotiable. *Klauber v. Biggerstaff*, 47 Wis., 551. To all appearances it was the individual property of the depositor, and not of the estate which he represented, and there was nothing on the books of the bank to indicate the contrary. It stood, therefore, precisely the same as though he had loaned the money to an individual at the time supposed to be responsible, and taken his negotiable note therefor without interest, payable on demand " in currency " to the order of himself. The making of the deposit and taking the certificate to himself individually was therefore not only an extinguishment of the identity

of the money, but an appropriation of it, in law, to his own personal use. This being so, shall the rule be established by this court that administrators, executors, trustees and guardians may insist upon settling their accounts by tendering such notes or certificates in lieu of cash, however worthless may be the makers or the bank at the time of settlement? The question is important, and the answer vast in its consequences. To hold the administrator answerable in this case is undoubtedly a great hardship; but to exonerate him from liability is to encourage the mismanagement of trust funds, and to open the door to frauds innumerable against those whose age and weakness entitle them to the most rigid protection of the law. The rule, therefore, should not be slackened, even if the question were a new one, much less in view of the authorities cited.

It may be said that the remarks of Mr. Justice PAINE in *School District v. Zink*, 25 Wis., 636, to the effect that the mere substitution of a certificate of deposit payable to the holder of a check on a bank for the check itself, worked no change whatever in the *status* or title to the fund in bank, are inconsistent with the view we have taken of this case; but in so far as that opinion is in conflict with this decision, it must be regarded as overruled.

For the reasons given, the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.


Judgment was duly entered by the clerk, at the January term, 1882, that the judgment of the circuit court be affirmed, with costs .(taxed at $44), " against the appellant as administrator, etc., to be by him paid out of the estate of said Stephen Williams, deceased." At the August term, 1882, the respondents moved to correct the judgment.

In support of the motion a brief was filed, and there was oral argument by *A. L. Sanborn*.

---

The following opinion was filed September 19, 1882:

CASSODAY, J.   This is a motion to correct the judgment of this court, entered in this cause at the last January term, so as to make the costs of the respondents on appeal payable by the appellant personally, instead of being payable out of the estate of the deceased, as provided by the judgment.   At the time of deciding the case, the subject of costs was considered by the court, and the judgment entered was strictly in accordance with the directions given, notwithstanding the opinion filed is silent upon that subject.   This being so, and the power of the court to correct the same at that term not having been carried forward to this term by motion, we are now without any power in the premises, and we must therefore deny the motion, upon the authority of the repeated decisions of this court.   *Pringle v. Dunn,* 39 Wis., 435, and cases there cited.   The error, if any, is not one of the clerk, but of the court, and hence does not come within the exception in the *Cole Case,* 52 Wis., 591.

*By the Court.*— The motion is denied.