Naltner *et al. v.* Dolan *et al.*

Filed Dec. 16, 1886.

---

No. 12,371.

### NALTNER ET AL. *v.* DOLAN ET AL.

ATTORNEY AND CLIENT.—*Attachment and Garnishment.*—*Money Collected for Client.*—*Deposit Without Designation of Trust Character.*—*Suspension of Bank. Liability of Attorney.*—Where an attorney deposits money collected for a client in his own name, although not in his private account, without anything to indicate its trust character, in a bank at the time in good credit, he is responsible for any loss that may occur by reason of the bank becoming insolvent, notwithstanding the transmission of the money to the client is arrested by garnishee process against the attorney before he has an opportunity to transmit it, and the deposit thus prolonged until the suspension of the bank,

From the Marion Superior Court.

*S. Claypool* and *W. A. Ketcham,* for appellants.
*J. R. Courtney,* for appellees.

Naltner *et al. v.* Dolan *et al.*

MITCHELL, J.—Naltner, on the 24th day of February, 1883, commenced proceedings in attachment against Dolan, and on the same day caused a summons in garnishment to be served on the appellants herein. On the 7th day of March following, upon his intervening petition, Montague was admitted as a party to the proceeding. He filed a cross complaint, in which he alleged, in substance, that the fund in the hands of the appellants—that being the subject of the attachment and garnishee proceedings—had been assigned to him by Dolan, for a valuable consideration, before the proceedings were commenced. He prayed judgment for the recovery of the money.

The appellants, with the general denial, answered specially, admitting the possession of a fund which they averred had come to their hands as the attorneys of Dolan. They alleged that they had been notified by Montague of his claim after the proceedings in garnishment had been commenced, and averred their readiness to pay the money to whomsoever the court should adjudge entitled thereto. Other answers were filed, to which demurrers were sustained.

The facts were found specially by the court, and are presented in the following summary: Dolan, who at the time the suit was commenced, lived in Illinois, owed Naltner $600, then due. The appellants, as attorneys, had in their hands for collection a claim in favor of Dolan, against the Indiana, Bloomington and Western Railway Company, which Dolan, on the 13th day of September, 1882, transferred for value, to Montague. On February 24th, 1883, the day on which the attachment suit was commenced, appellants received from the clerk of the United States District Court, for the District of Indiana, checks for something over $80,000 which was in payment of claims against the Indiana, Bloomington and Western Railway Company, which payment was made to them in behalf of Dolan and many other of their clients. Dolan's claim against the railway company was $600. Upon receiving the check they deposited it with the Indiana Bank-

ing Company, which was then in good standing, the deposit being to the credit of themselves, in their firm name. The money thus received belonged to some hundreds of their clients, and the computation of interest, and the division to each of his share required several days' continuous work before distribution could be made.

The appellants were lawyers, partners, actively engaged in practice. They had an account at the bank in question in which all money collected for, and belonging to, their various clients was deposited and checked out in the firm name, but such moneys were not mingled with their own.

Before they had time or opportunity to pay out the money in controversy, the appellants were garnished at the suit of Naltner. They received notice of the assignment to Montague February 28th, 1883, four days after the suit was commenced. Montague, within a few months after giving notice of his claim, and while the proceedings in garnishment were pending, made demand on the garnishee defendants for the money remaining in their hands, which was derived from the Dolan claim.

On the 9th day of August, 1883, the Indiana Banking Company, having until that time continued in good standing and credit, failed. A receiver was appointed for the bank August 13th, 1883. The appellants brought the certificate of the receiver of the bank for the money in dispute into court, and offered to surrender it to the person entitled as the court should direct. The amount remaining in their hands in the manner above stated, was $445.69.

Conclusions of law were stated favorable to a recovery by Montague, against the appellants, of the amount thus remaining in their hands.

Do the facts found warrant the conclusion of law stated?

Money belonging to a client having been received by the attorneys, in payment of a claim left with them for collection, the transmission of such money having been arrested by garnishee process before an opportunity for transmitting it

occurred, the question is, having acted in the utmost good faith, and without any suggestion of fault or neglect, are the attorneys responsible for the continued solvency of the bank in which such funds were deposited in their own name, but not with their own funds, notwithstanding the bank was in good credit when the deposit was made ?

The receipt of money by an attorney, under the circumstances disclosed in this case, does not *ipso facto* create the technical relation of debtor and creditor between the attorney and client.   It is because it does not that a suit can not be maintained by the latter against the former without first making a demand.   Money so collected belongs to the client. The attorney occupies toward it the relation of a trustee, so long as he chooses to treat and preserve the fund as a trust fund.  The circumstances under which he will be liable for its loss are precisely those which govern in the case of any other trustee.   While it is preserved in its trust character, if he exercises the same caution in respect to depositing it, if a deposit becomes necessary or proper, as a prudent man would in regard to his own money, and a loss happens, he will be excused.   *Norwood* v. *Harness*, 98 Ind. 134 (49 Am. R. 739) ; *State, ex rel.,* v. *Greensdale,* 106 Ind. 364 (55 Am. R. 753).

The authorities, however, distinguish between cases in which the deposit was made in such a manner as to preserve its trust character on the books of the bank in which the fund was deposited, and those in which the owner of the fund might be put to the trouble of proving by extraneous evidence that the fund was not the individual money of his trustee.   Whenever a trustee, unless properly authorized to do so, puts the fund in such shape as to invest himself with a legal title to it, the *cestui que trust* has his election, either to treat the fund, according to the appearance of things, as the property of the trustee, and regard the latter as his debtor, or he may demand that the title be transferred to him.   If a deposit is made in such manner as, on the face of the books

of the bank in which the deposit is made, to authorize the trustee, his assignee, or legal representative, to claim it as the fund of the depositor, the *cestui que trust* has the option to do likewise. *Merket* v. *Smith,* 33 Kan. 66; *McAllister* v. *Commonwealth,* 30 Pa. St. 536; *Morris* v. *Wallace,* 3 Pa. St. 319; *Jackson* v. *Bank, etc.,* 10 Pa. St. 61; *School District, etc.,* v. *First Nat'l Bank,* 102 Mass. 174; *Utica Ins. Co.* v. *Lynch,* 11 Paige, 520; *Bartlett* v. *Hamilton,* 46 Maine, 435; 2 Pomeroy Eq. Jur., sections 1067–1076; Perry Trusts, sections 443, 444; Story Agency, section 208.

In case it becomes the duty of an agent or trustee to deposit money belonging to his principal, he can escape the risk only by making the deposit in his principal's name, or by so distinguishing it on the books of the bank, as to indicate in some way, that it is the principal's money. If he deposit in his own name, he will not, in case of loss, be permitted to throw such loss on his principal. *Williams* v. *Williams,* 55 Wis. 300 (42 Am. R. 708); *Norris* v. *Hero,* 22 La. Ann. 605; *Mason* v. *Whitthorne,* 2 Cold. (Tenn.) 242; *Jenkins* v. *Walter,* 8 Gill & J. 218; *Robinson* v. *Ward,* 2 C. & P. 60; *Macdonnell* v. *Harding,* 7 Sim. 178; *State, ex rel.,* v. *Greensdale, supra.*

In such a case, the good faith or intention of the trustee is in no way involved. Having for his personal convenience, or from whatever motive, deposited the money in his own name, thereby vesting himself with a legal title, it follows as a necessary consequence, when a loss occurs, he will not be permitted to say, as against his *cestui que trust,* that the fact is not as he voluntarily made it appear.

What the legal or equitable rights of the real owner of the fund would be in such a case, as against the bank, or as against attaching creditors of the depositor, has been the subject of much discussion, and of some diversity of opinion. *Pennell* v. *Deffell,* 4 DeG. M. & G. 372; *Farmers', etc., Bank* v. *King,* 57 Pa. St. 202; *School District, etc.,* v. *First Nat'l*

*Bank,* 102 Mass. 174; *Jackson* v. *Bank, supra; Bundy* v. *Town of Monticello,* 84 Ind. 119, 131, and cases cited; *McLain* v. *Wallace,* 103 Ind. 562; *McComas* v. *Long,* 85 Ind. 549; *Ellicott* v. *Barnes,* 31 Kan. 170, 173; Morse Banks and Banking, 300–302.

Whatever diversity of opinion may be found in respect to the rights of the bank, or other creditors of the depositor, the authorities agree that a trustee who either invests or deposits trust money in his own name, without in some way designating it as trust property, will be responsible for any loss that may occur to the fund while so invested or deposited. *Gilbert* v. *Welsch,* 75 Ind. 557; 2 Leading Cases in Equity, 1805.

Having put the owner of the fund to the hazard of losing it, or of maintaining its trust character by such proof *aliunde.* as may be available to him, the trustee thereby gives the former the privilege of treating the latter as his debtor, or of supplying the proof, or accepting his admission of the facts, at his option.

Applying the principles stated to the facts found, the conclusion follows, that the appellants assumed the risk that the bank, in which the fund was deposited in their name, and from which it could only have been drawn by their check, would be able to respond with the money when their check for it should be presented.

The fact that none but money belonging to clients was deposited in the account in which the fund in question was placed does not alter the case. The controlling consideration is, that it was deposited to the credit of the firm, without anything to designate or preserve its trust character. They took and retained the legal title to the deposit in themselves. In the event of a controversy, the character of the fund would have depended wholly on extraneous proof. This being so, the owner had the right to elect to stand upon the title to the deposit, as he found it. Having so elected, there is no rule

of law which authorizes any inquiry into the motives for so taking the title, short of an express or implied direction from the owner of the fund.

The judgment is affirmed, with costs.

Filed Sept. 23, 1886; petition for a rehearing overruled Feb. 18, 1887.