## ALLEN v. DAVIS ET AL.

[No. 1,977.   Filed Jan. 14, 1897.   Rehearing denied April 1, 1897.]

PRINCIPAL AND AGENT.—*Deposit of Principal's Money by Agent.— Liability of Principal for Overdraft of Agent.*—Where a principal furnishes money to his agents to purchase wheat for him for cash, and the agents deposit the money as received, on their own account, together with other money, with a merchant, the merchant knowing of the original agency and knowing that the agents were acting for their principal, and such agents issue checks on such deposits in payment of wheat purchased by them for their principal and for other purposes, and finally withdraw the balance on deposit and pay same to their principal in settlement, the merchant with whom the deposits were made cannot recover from the principal a balance on a check issued by such agents against such deposit, for wheat purchased for the principal at a time when they had money on deposit, and which was presented by the payee thereof with the request that part payment only be made thereon, the balance of which such merchant was required to pay after the deposits had all been withdrawn, the principal having no knowledge of the unpaid check at the time the money was paid him.

From the Tippecanoe Circuit Court.   *Reversed.*

*Joseph P. Gray, Edwin P. Hammond, Charles B. Stuart* and *William V. Stuart,* for appellant.

*James V. Kent* and *John F. McHugh,* for appellees.

ROBINSON, J.—On the 15th day of June, 1892, the appellant, then residing at Frankfort, Indiana, entered into a written agreement with the firm of Miller and Kendall by which the appellant agreed to furnish, in such sums and at such times as were necessary to carry out their agreement, all the money with which Miller and Kendall should buy grain for the appellant, at Colfax, Clinton county, Indiana.   Miller and Kendall agreed to buy for the appellant exclusively all

Allen *v.* Davis *et al.*

the grain possible with the exercise of reasonable dili-
gence, and to pay such prices only as the appellant
should designate to them; they further agreed to
guarantee the weights and grade of all grain so pur-
chased by them, to load all the grain so bought and
ship the same in appellant's name to such points as
the appellant should designate, and as fast as shipped
to turn over all bills of lading to appellant; to send to
appellant scale checks daily of all grain bought for
him, to use all the money sent them in the purchase
of grain for appellant, and to call upon him for money
only when needful to comply with their agreement.
The appellant was to pay Miller and Kendall for their
services two cents a bushel for all grain so bought and
handled by them.

The evidence in this case shows the following facts:
Miller and Kendall bought wheat under this agree-
ment from the date of its execution until some time in
September following.   During that time the appellees
under the firm name of Geo. Davis & Bro. were en-
gaged in the mercantile business in Colfax.   There
being no bank at Colfax, Miller and Kendall deposited
the money they used for purchasing wheat with appel-
lees, and issued checks on the appellees for wheat
bought from farmers and others, blank checks for the
purpose being furnished by the appellees.   The appel-
lees requested that Miller and Kendall deposit their
money with them.   The appellant knew that the
money, or some of it at least, he was furnishing from
time to time to Miller and Kendall was being de-
posited with the appellees.   All the money deposited
during said time by Miller and Kendall with the ap-
pellees was deposited in the name of Miller and Ken-
dall, and all the checks drawn on the appellees were
signed by Miller and Kendall in their own names.   The
first money deposited by them with the appellees was

on June 18, 1892, and the last on September 3, 1892. They deposited with the appellees the money they received from the appellant and also from other sources. During the time between, and including these two dates Miller and Kendall deposited in their own names with the appellees the total sum of $20,990.75, and during the same time the appellant furnished Miller and Kendall under the contract, $16.105.00. This money was kept in a pocketbook by the appellees, separate and apart from their own money. All money received by them from Miller and Kendall from whatever source was put in the same pocketbook and was paid out only on checks signed by Miller and Kendall, without reference to whether it was used in payment for grain purchased for the appellant, or for other purposes. No book account was kept of the money deposited and drawn out. The appellees kept a memorandum of the amounts deposited, with dates, and the checks paid showed the amounts paid out; but they kept no separate account of money which Miller and Kendall had received from the appellant, nor did they know what part of the total amount came from the appellant.

On the —— day of September, 1892, within a few days after the last deposit was made by Miller and Kendall with appellees, the appellant and Miller and Kendall had a settlement of their accounts. On that day Miller and Kendall were owing the appellant an amount in excess of $402.00, and on that day Miller and the appellant went to appellees' store, and at the request of Miller, George Davis, of the firm of George Davis and Bro., paid to Miller all the money Miller and Kendall then had on deposit with the appellees, amounting to $402.00, which sum Miller then paid to the appellant.

On the 7th day of August, 1892, Miller and Kendall

purchased from Malinda Mitchell, wheat amounting to $163.68 and issued to her a check or order for said sum on appellees and signed by Miller and Kendall. This check was presented to the appellees for payment during the month of August, and at the request of Mrs. Mitchell, appellees paid her thereon, $63.68, and endorsed on the back thereof, "paid on this check $63.68," and handed the check back to her, which she retained. At the time this payment was made, Miller and Kendall had more than enough money on deposit with the appellees to pay the whole amount named in the check or order, and the part payment was made entirely at the request of Mrs. Mitchell. At the time of the settlement between the appellant and Miller this check was still unpaid. The appellant did not know until after the settlement with Miller that the check was in existence.

After the settlement between the appellant and Miller at appellees' store, the appellant was notified of the outstanding check. Payment was demanded of him, which he refused. Afterwards, in January, 1893, Mrs. Mitchell recovered a judgment in the Clinton Circuit Court against the appellees for the balance due on the check, which judgment the appellees paid on February 23, 1893. This action is brought by the appellees to recover from the appellant the amount paid by them to Mrs. Mitchell.

The complaint is in three paragraphs. A demurrer was sustained to the second paragraph and overruled as to the first and third, and exceptions saved. The appellant then answered by general denial. The cause was tried by the court, and a finding made in favor of the appellees for one hundred dollars. Appellant filed a motion for a new trial, on the grounds that the finding was not sustained by sufficient evidence, that it was contrary to law, that the damages

assessed were excessive, and for errors of law occurring at the trial on the admission and rejection of certain testimony which is particularly set out in the motion. The motion was overruled and exception taken. Judgment rendered on the finding.

The only errors assigned in this court and discussed by counsel in their brief call in question the overruling of the demurrer to the first and third paragraphs of the complaint respectively, and the overruling of the motion for a new trial.

No error was committed in overruling the demurrer to the first and third paragraphs of the complaint. The first paragraph is the common count for money had and received and contains all necessary averments.

The third paragraph of the complaint also states a cause of action. We do not think it necessary to set out this paragraph at length. The objections urged by appellant's counsel are met by the allegation that the appellant, through his agent, deposited money with the appellees, under the agreement that as purchases of grain were made the agents would draw checks or orders on the appellees for the purchase price thereof, and upon presentation of such checks to them the appellees would pay the same out of the money deposited with them by the appellant.

The only remaining error discussed by the appellant's counsel is the overruling of the motion for a new trial.

There is some conflict in the evidence as to the time when, after the payment of the money to the appellant upon the settlement with Miller, the appellant was notified of the outstanding check. But it is not denied that he knew nothing of it until after the settlement had been completed and the money paid to him by

Miller, and the *bona fides* of the transaction is to be determined as of that time.

Neither is it clear from the evidence whether the wheat purchased from Mrs. Mitchell and for which the check was issued was received by the appellant. But we do not think that question is material to a correct decision of this case so far as the equity of the case is concerned, for it cannot be said from the evidence that the appellant has both the wheat and the money.

Miller and Kendall were the agents of the appellant, and were empowered to do everything necessary to carry out the terms of the written agreement. By the terms of that agreement the agents had no power to purchase wheat on the appellant's credit. They had authority to purchase wheat for the appellant for cash only. For their own convenience the agents entered into an agreement with the appellees for depositing the money with them. The consideration for that agreement was between the appellees and Miller and Kendall. The appellees knew of the agency, yet they chose to act with them on their own account.

There was no agreement between the appellant and the appellees about how the money furnished Miller and Kendall should be deposited. Appellant may have known that the money he was furnishing them was being deposited with the appellees. But appellees paid out none of it except on checks signed by Miller and Kendall. The money having been deposited in the name of Miller and Kendall and mingled with their own money, the legal title to the money was in them. They could issue checks for it for any purpose they saw fit, and did issue checks on the deposit for purposes other than for the purchase of wheat for the appellant. The appellees were not owing the appellant any money when the $402.00 was paid him. He did not receive as much money at that time as

Miller and Kendall were owing him. A balance was still owing the appellant after the above payment by Miller.

The rule of law governing this case is the same as it would have been had the outstanding check been issued for some purpose other than the purchase of wheat.

It by no means follows that the $402.00 was the balance of the money which the appellant had furnished to Miller and Kendall, and deposited by them with appellees.

It cannot be said that appellant received this money as his money, but he received it from Miller as part payment of what Miller at that time owed him. When the money which appellant furnished to Miller and Kendall had been by them commingled with their own money, it lost its identity, and could not, therefore, stand on the same ground as chattels.

It was held in *Lime Rock Bank* v. *Plimpton*, 17 Pick. 159, 28 Am. Dec. 286, that where an agent had loaned the money of his principal to his private creditor, who appropriated it to the payment of the debt, the principal could not recover it, the creditor not knowing at the time of the loan that the money belonged to the principal.

And where an agent deposits his principal's money in his own name together with his own funds the agent will be liable for a loss by a subsequent failure of the bank. *Naltner* v. *Dolan*, 108 Ind. 500, 58 Am. Rep. 61; Mechem on Agency, section 529; Story's Equity, section 1270; Story's Agency, section 208; *Norris* v. *Hero*, 22 La. Ann. 605; *Cartmell* v. *Allard*, 7 Bush. 482; *Commonwealth* v. *McAllister*, 28 Pa. St. 480.

We can see no difference between the above rule and the case where an agent after mingling the money

with his own deposits the whole in his own name and then overdraws the amount by a check to an innocent third party.

In the case of *Stapp* v. *Spurlin*, 32 Ind. 442, the party who sold the wheat, the agent and the principal were the parties concerned. In that case the principal had put it in the power of his agent acting for him to wrong a third party and it was rightly held that the principal must respond. The principal trusted the agent to act for him, and as between the principal and the one who had dealt with him as his agent in good faith the principal must suffer the consequences of the bad faith of the agent with him.

But in the case at bar the rights of the parties are not to be determined from the original contract of agency. The arrangement entered into between the appellees and Miller and Kendall, as shown by the evidence, was not incident to the original contract of agency. The appellees knew the original agency and knew the agents were acting for the appellant. Knowing this fact they entered into an agreement with Miller and Kendall with which appellant had nothing whatever to do. He had no control over the deposit. It did not belong to him. A part of it was money derived from other sources. He could not issue checks or orders upon it. He was an entire stranger to the agreement. With a disclosed principal, the appellees chose to make an agreement with the agents alone, and if a mistake arose in carrying out the agreement, a person who is not a party to the agreement and who had nothing whatever to do with the commission of the mistake, should not suffer by it.

If at the time of entering into a contract the agent discloses the name of his principal, and the contract is then made with the agent alone, the person making

such contract with the agent cannot maintain an action upon it against the principal. *Silver* v. *Jordon*, 136 Mass. 319.

If the money is paid under a mistake of a material fact it may be recovered back. In this case a mistake was made when the appellees paid to Miller and Kendall more money than they then actually had on deposit. But there was no mistake in the payment of the money by Miller to the appellant.

As between the appellees and the agents the appellant is innocent of wrong or laches. If there was a wrong it consisted in drawing from the appellees, money, against a part of which there was an outstanding check. As between the appellees and the appellant the rule should be applied that whenever one of two innocent persons must suffer by the acts of a third, he who has put it in the power of such third person to occasion the loss must sustain it. *Preston* v. *Witherspoon*, 109 Ind. 457, 58 Am. Rep. 417; *Hunter* v. *Fitzmaurice*, 102 Ind. 449; *Lickbarrow* v. *Mason*, 2 Term. Rep. 70; *New York, etc., R. R. Co.* v. *Schuyler*, 34 N. Y. 30.

After a careful consideration of all the facts and circumstances in this case we are of the opinion that the rights of the parties to this suit must be determined without reference to the original contract of agency. The record fails to show that Miller and Kendall did business with the appellees as the agents of the appellant; but on the contrary, that the appellees, knowing that they were appellant's agents, chose to do business with them as principals and not as agents. The motion for a new trial should have been sustained.

Judgment reversed.