## FIDELITY & DEPOSIT CO. OF MARYLAND v. REDFIELD.

(Circuit Court of Appeals, Ninth Circuit. August 24, 1925. Rehearing Denied October 12, 1925.)

No. 4490.

**1. Principal and surety ⊗═190½—Denial of defendant surety company's motion for directed verdict held under evidence not error.**

Plaintiff, as judgment debtor in state court, to secure supersedeas, made cash deposit of $23,000 with bank on certificate payable to clerk, and thereafter assented to arrangement whereby money remained in bank and supersedeas bond was obtained from surety company. Bank paid premium, and surety caused certificate to be issued in its name and payable 30 days after demand, 6 months after date. Before collection of certificate, after maturity thereof, bank was closed by Comptroller of Currency. Plaintiff sued surety company for alleged negligence in not collecting certificate before bank's failure. Held, under evidence, that denial of surety's motion for instructed verdict was not error; it being bound to exercise of ordinary prudence and diligence in making and continuing deposit.

**2. Evidence ⊗═479—Permitting receiver to state daily cash balances of bank, and that certificate could have been paid at maturity on notice, not erroneous.**

In suit against surety company for its alleged negligence in depositing money in bank and continuing it there after maturity of certificate, there was no error in permitting receiver of bank to state daily cash balances as shown by statements, when figures thus given were incorrect, because including noncash items, and to permit him to state certificate could have been paid at any time after due date on notice; evidence being admissible to show bank's capacity to pay, and receiver's statement being expression of judgment from investigation of bank's books.

**3. Principal and surety ⊗═190½—Refusal to strike testimony showing that surety company might have obtained payment of certificate not error.**

In suit against surety company for alleged negligence in depositing money in bank and continuing it there after maturity of certificate, there was no error in refusal to strike bank's receiver's testimony that on date certificate was due bank had outstanding certificates of deposit in named sum, and on date bank was closed it had certificates outstanding in less amount; evidence showing that depositors generally were demanding payment, and surety company might also have obtained payment.

**4. Principal and surety ⊗═190½—Special power of attorney to brother of plaintiff properly admitted to show absence of knowledge of bank's condition and lack of knowledge that plaintiff assumed primary responsibility on bond.**

In suit against surety company for alleged negligence in depositing money in bank and continuing it there after maturity of certificate, there was no error in admitting in evidence special power of attorney from plaintiff to brother to deliver certain collateral to surety company to guarantee it against loss on account of bond; instrument being admitted to show absence of plaintiff's knowledge of condition of bank, and that he did not know he assumed primary responsibility on supersedeas bond.

**5. Evidence ⊗═208(4)—Excluding copy of answer and counterclaim in another case held without error.**

Where answer and counterclaim of plaintiff in another case, in which third parties sued him, were not signed or sworn to by plaintiff, and admissions contained therein were not made by him, excluding certified copies thereof was not error.

**6. Principal and surety ⊗═190½—Permitting testimony as to general reputation of bank for solvency before certificate matured, and until it was closed, held without error.**

In suit against surety company for its alleged negligence in depositing money in bank and continuing it there after maturity of certificate, there was no error in admitting testimony as to general reputation of bank for solvency from time of run on it, prior to maturity of certificate, until it was closed after certificate was due.

**7. Principal and surety ⊗═190½—Surety company not relieved by agreement from its failure to exercise diligence as to collateral.**

Agreement that surety company shall not be responsible for any loss resulting to certificate of deposit and shares of corporation stock pledged with it as collateral from any cause other than its own neglect held not to change common-law rule that pledgee of collateral is required to exercise reasonable diligence in matter of protection, and is liable for loss to pledgor for negligence.

**8. Principal and surety ⊗═190½—Surety company not relieved by agreement from its failure to exercise due diligence as to collateral.**

Provision in contract giving surety company right in its discretion to retain collateral deposited with it until its liability on account of bond ceased held not to release it from failure to exercise due diligence as to collateral.

In Error to the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Action at law by Fred W. Redfield against the Fidelity & Deposit Company of Mary-

land. Judgment for plaintiff, and defendant brings error. Affirmed.

The defendant in error was a judgment debtor in a certain judgment for $22,405.19, rendered against him and another in a district court of the state of Idaho. On November 14, 1919, appeal was taken to the Supreme Court of Idaho, and the defendant in error, to secure a supersedeas, made a cash deposit of $23,000 with the First National Bank of Burley, Idaho, upon a certificate of deposit payable to the clerk of said district court. In February, 1921, the judgment creditors, being doubtful of the sufficiency of the security on account of the condition of the bank, prevailed upon the clerk to demand payment of the certificate of deposit. The defendant in error, in consequence of the appeal of the president of the bank, instead of permitting the clerk to draw out the money, assented to an arrangement whereby the money remained with the bank, and a supersedeas bond was obtained from the plaintiff in error, hereinafter designated the surety company. For that bond the bank paid the premium, and the surety company, to indemnify itself against loss, caused a certificate of deposit of the money of the defendant in error in the bank to be issued in its name and payable to its order "30 days after demand, in current funds, 6 months after date, with interest to maturity only, at the rate of 6 per cent. per annum." On October 24, 1921, the Supreme Court of Idaho affirmed the said judgment so appealed from. Stringer v. Redfield, 34 Idaho, 378, 201 P. 714. On November 19, 1921, the bank was closed by the Comptroller of the Currency. On December 15, 1921, the surety company indorsed the certificate without recourse and delivered the same to the defendant in error.

The defendant in error brought his action against the surety company in the court below to recover the sum of $24,500.44 and interest, and in addition to the foregoing facts alleged in his complaint that the said certificate of deposit so issued on February 16, 1921, was due and payable at any time on or after August 16, 1921, on 30 days' demand; that on February 16, 1921, the said bank was an unsafe place to deposit said trust fund; that it had a capital of but $30,000; that the surety company knew it to be an unsafe place, the instability of the bank being a matter of common knowledge and general notoriety, then and at all times thereafter; that the surety company knew of the determination of said appeal to the Supreme Court of Idaho at the time thereof, but failed

7 F.(2d)—51

to present said certificate of deposit for payment before the bank was closed. The acts of the surety company in these matters, and in failing to use the said money so deposited for the payment of the judgment upon the final determination of the case, were alleged to be carelessness and negligence, such as to render the surety company liable for the payment of the said money so deposited. The jury returned a verdict for the defendant in error, and judgment was entered thereon.

Frank T. Wyman, of Boise, Idaho, for plaintiff in error.

Charles A. Sunderlin, of Los Angeles, Cal., and Wm. M. Morgan and E. B. Smith, both of Boise, Idaho, for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The principal contention of the surety company is that it was error to deny its motion for an instructed verdict in its favor. Upon some of the facts the evidence was conflicting. The defendant in error resided in California. During the year 1921 he was represented by his brother, who resided at Burley, Idaho, to whom he had given a power of attorney to execute a bond to the surety company to secure it against liability on its undertaking on the appeal. Neither he nor his brother had any control over the certificate of deposit issued to the clerk of the state court, and when the certificate was issued in the name of the surety company neither he nor his brother was consulted, or was aware of the exact nature of the transaction. The surety company directed the form of the certificate. There was evidence that the surety company could have collected the money, if at any time prior to the day preceding the date of the closing of the bank it had made demand therefor, and evidence tending to indicate that the surety company assumed the responsibility of leaving the money on deposit. There is absence of evidence to show that it consulted the defendant in error as to the disposition of the money. The surety company knew of a run on the bank in April, 1921, and there was evidence tending to show that it knew that by general reputation of the bank in the community it was considered of doubtful solvency. The court below carefully instructed the jury as to the issues and the evidence, and duly safeguarded the rights of the surety company.

We find no warrant for saying that the court, which heard the testimony and thus submitted the cause to the jury, erred in denying the motion for an instructed verdict. The surety company was a trustee of the money so deposited in the bank. It was bound to the exercise of ordinary prudence and diligence both in making and continuing the deposit, 26 R. C. L. 1314; Norwood v. Harness, 98 Ind. 134, 49 Am. Rep. 739; Philadelphia Finance Co.'s Appeal, 144 Pa. 499, 22 A. 831, 14 L. R. A. 103. It is held that the amount which a trustee may leave lying in a bank at one time must not be too great (note, 14 L. R. A. 103, 105), and that he must not keep money on deposit for an unreasonable time (Barney v. Saunders, 16 How. 536, 14 L. Ed. 1047), and that, by depositing trust money in a bank and taking a certificate of deposit payable in 12 months, a trustee becomes liable for the same in case of its loss through the insolvency of the bank before the time of payment (Baer's Appeal, 127 Pa. 360, 18 A. 1, 4 L. R. A. 609). If he deposits the money in his own name, thereby vesting himself with legal title, he is likewise responsible in case of loss. Naltner v. Dolan, 108 Ind. 500, 8 N. E. 289, 58 Am. Rep. 61; Williams v. Williams, 55 Wis. 300, 12 N. W. 465, 13 N. W. 274, 42 Am. Rep. 708. See, also Corya v. Corya, 119 Ind. 593, 22 N. E. 3; O'Connor v. Decker, 95 Wis. 202, 70 N. W. 286; Re Arguello, 97 Cal. 196, 31 P. 937.

We are not impressed with the argument that the defendant in error is in no position to charge the surety company with negligence in leaving the money in the bank, for the reason that he had first deposited the money there, taking a certificate of deposit in the name of the clerk of the court, and had permitted it to remain in the bank, and at no time demanded that it be taken therefrom, or protested against the issuance of the certificate to the surety company, or demanded that the surety company withdraw the money. At the time when the defendant in error deposited the money, so far as the evidence goes, no question had been made of the solvency of the bank. The certificate of deposit then issued was accepted by the clerk as cash, and was by him renewed as cash, and so remained until more than a year later, when the surety company executed the appeal bond and took over the money so deposited. It was after that date that questions arose as to the solvency of the bank, and explanation of the silence and nonaction of the defendant in error may be found in the fact that during the whole of the time in-

volved in the controversy he resided in California, and that his power of attorney, executed to his brother in Idaho, was but a power to assign certain collaterals, in addition to the money deposited in the bank, to secure the surety company against loss upon the bond.

[2] It is said that it was error to permit the receiver to state the cash balances, as shown by the daily statements of the bank, when the figures thus given were admittedly incorrect, and to permit him to testify that the bank could have paid the certificate at any time after August 16, 1921, on 30 days' notice, except possibly the last day before the bank closed. The receiver admitted that the bank's statements, purporting to show the amount of cash in the bank at the close of business each day, included cash items which were not cash, and that he could not say, nor did the books from which he was testifying show, the amount of actual cash in the bank. But he testified that the bank had reserves in other banks, from which it could have drawn to meet its demands, and it was shown that the bank had such a reserve in the Federal Reserve Bank of San Francisco and other depositories. The evidence was admissible to show that the capacity of the bank to pay the deposit, if the surety company had demanded payment, did not depend upon the actual cash in the bank, but upon its ability to obtain money from all sources. The receiver's testimony that the certificate could have been paid was the expression of his judgment, derived from an examination of the books and records of the bank and the bank's condition covering several months of investigation. We think there was no error, therefore, in admitting the testimony.

[3] Nor do we think it was error to refuse to strike out the receiver's testimony that on August 16, 1921, the bank had $111,-450.61 in certificates of deposit outstanding; whereas, on November 19, 1921, it had but $67,847.51. The purpose of the testimony was to show that the surety company was negligent in failing to withdraw the money on its maturity, August 16, 1921, for, as we read the certificate of deposit, it was payable on August 16, 1921, provided that payment had been demanded 30 days prior thereto. The evidence showed that depositors generally were demanding payment of their certificates, and it tended to show that, if the surety company had chosen to do so, it might have obtained payment of the certificate in question.

[4] Nor do we find that it was error to admit in evidence the special power of attor-

ney from the defendant in error to his brother, offered in connection with the testimony of the brother. The objection was that the brother had testified that he was in Burley in charge of the business of the defendant in error, and he had testified that he did not at any time notify the defendant in error of his doubt or suspicion in regard to the solvency of the bank. The instrument was admitted for its possible effect intending to show absence of knowledge on the part of the defendant in error, and that he did not know or realize that he was assuming any primary responsibility on the bond, but was merely guaranteeing and indemnifying the surety company against loss. The instrument bears that construction. The power which it confers is to deliver certain collateral to the surety company to guarantee it against loss by reason of its giving "any bond or other security to the First National Bank of Burley, Idaho, in consideration of said bank paying over to me the sum of $21,000 or thereabouts, now on deposit to my credit in said bank."

[5] Error is assigned to the exclusion of a certified copy of an answer and counterclaim filed by the defendant in error in an action brought against him by the Federal Reserve Bank. The action was brought in a state court of Idaho to recover on the promissory notes of the defendant in error, whereby he borrowed funds to make up the sum total of his original deposit in the Burley bank. The answer and counterclaim were offered in evidence in the case at bar, for their allegations that the Federal Reserve Bank, knowing the insolvency of the Burley bank, had kept that bank open for business and fraudulently induced the defendant in error, "through his agent, the Fidelity & Deposit Company of Maryland" to deposit in the bank on February 16, 1921, $24,500; that the bank would have closed its doors prior thereto and said deposit would not have been made, but for the conspiracy of the Federal Reserve Bank and the Burley bank, through their officers, and their fraudulent acts; and that he would have withdrawn said deposit from the bank prior to its failure, had it not been for said conspiracy and fraudulent acts. There were other allegations of like nature.

The evidence was excluded obviously, and properly, we think, for the reason that the answer and counterclaim were not signed or sworn to by the defendant in error, and the admissions contained therein were not made by him. He was in Los Angeles at the time, and it is not shown that he was aware of the contents of the pleading, or was consulted concerning the same. "It has been held that a party is bound by admission contained in a pleading prepared by his attorney, although he did not know of the statements therein, and even though he had no actual knowledge of the existence of the pleading. But the more generally accepted view recognizes a distinction between statements contained in pleadings in another case, which are emanation of counsel, and those which can fairly be regarded as statements by the party, and as a result requires, as a condition of admissibility, that the statement be affirmatively connected with the party as one which he has made because it was true." 22 C. J. 335; Combs v. Hodge, 21 How. 397, 16 L. Ed. 115; Delaware County v. Diebold Safe Co., 133 U. S. 473, 10 S. Ct. 399, 33 L. Ed. 674; Smith v. Davidson (C. C.) 41 F. 172; Creal v. Gallup, 231 F. 100, 145 C. C. A. 284.

The surety company, invoking the doctrine that the rules of evidence in state courts are ordinarily followed by the federal courts in civil cases at law, contends that the Supreme Court of Idaho has adopted a rule at variance with that of the federal courts and the courts of the United States generally, and cites Pence v. Sweeney, 3 Idaho, 181, 28 P. 413, and Shurtliff v. Extension Ditch Co., 14 Idaho, 416, 94 P. 574. All that was held in the Pence Case was that an answer verified by the defendant, admitting the allegations of the complaint, was admissible in evidence, although it was made and sworn to without the knowledge or consent of the defendant's attorneys. In the Shurtliff Case the court held that a complaint sworn to by the plaintiff's attorney, and not by the plaintiff, should have been admitted in evidence, but it appeared in that case that, although the plaintiff did not verify the complaint, he gave to his attorney the facts on which it was based. The case was thus brought within the exception recognized in cases where "information with respect to the facts set forth could have come to the attorney only from his client." 22 C. J. 335; Johnson v. Russell, 144 Mass. 409, 11 N. E. 670.

[6] We are not convinced that it was error to permit witnesses to testify as to the general reputation of the bank for solvency from the time of the run upon it in April, 1921, until it was closed. Although the general agent of the surety company lived at Boise, more than 200 miles distant from Burley, the company had at the latter place a local agent, and at the time of the run on the bank the general agent obtained from the local agent a report upon the condition of

the bank at that time and the circumstances attending the run. It knew that the bank paid the premium for the bond, and it had such knowledge of the business of the bank as might come to it from the fact that it had furnished bonds for the fidelity of the officials and employés of the bank. We think there was sufficient evidence to be submitted to the jury, and. sufficient to bring the case within the rule cited by the surety company, to the effect that the party sought to be charged with knowledge of the notoriety of a fact must be a resident of the immediate neighborhood.

[7] We are unable to see reversible error in the denial of the surety company's requested instruction concerning the effect of the agreement which it made with the defendant in error at the time when it executed the bond. That agreement contained the provision: "The Fidelity Company shall not be responsible for any loss resulting to the above-described security from any cause other than its own neglect of its officers and employés." The security so referred to was the certificate of deposit for $24,500 and certain shares of stock in four corporations, pledged to the surety company as collateral. The requested instruction was that, under that agreement, no duty rested upon the surety company at any time prior to the failure of the bank to cash the certificate of deposit, and that its failure to do so was not evidence of any negligence on its part. The court below found nothing in the agreement to change or modify the rule of the common law that a pledgee of collateral is required to exercise reasonable diligence in the matter of its protection and is liable to the pledgor for loss by reason of his negligence. The court so instructed the jury, and submitted to them the question whether the surety company acted carelessly, or used the care which an ordinarily prudent person would have exercised under the circumstances. No exception was taken to that, or to any other portion of the instructions.

[8] The surety company relies further upon that provision of the contract which gave it the right "in its discretion to retain said collateral as hereinafter provided, until the liability of the Fidelity Company on account of having signed said bond shall cease and determine." That provision is but an expression of the right of every pledgee under a contract of pledge, unless it is otherwise stipulated. It has no effect or tendency to relieve the surety company of the effect of its failure to exercise due diligence.

The judgment is affirmed.