Mr. Justice CAMPBELL
 

 delivered the opinion of the court.
 

 The plaintiff filed his bill to establish his claim to two certificates for a portion of the public'debt of the Republic of Texas, which had been issued to him in the year 1839, and which were transferable by him, or his attorney, or his representative, only, on the books of the stock commissioner .of that State. Heavers that these certificates with others were endorsed in blank by him, and sent to the defendant, Love, in Texas, during the year 1840, with authority to receive an an
 
 *404
 
 ticipated partial payment, and to obtain other certificates of the same description for the residue. That he did not give to his agent any authority to sell them, or to dispose of them for his own use, and has done no act to defeat his own legal title to them. ’That Love did not collect any part, of the debt, and has failed to return the two certificates in question. That for fifteen years he has been unable to discover who was in possession of them, and has but recently ascertained that they were held by one of the defendants under a claim of title from Love.
 

 He attached to his bill a. number of letters of Love, containing admissions of his receipt of the certificates, and of his agency for-the plaintiff; and subsequently to the conversion ' by him of these, he wrote to the plaintiff in extenuation of his C; nduct, affirming that he had a power of attorney and letters' from the plaintiff authorizing him to sell. That he would endeavor to replace the stock, or would give other stock of the same description, and insisted that the liberty he had taken was excusable.
 

 The defendant (Hodge) answered to the bill that these certificates were claimed as the property of the .decedent, Andrew Hodge. That he purchased them from Love fairly, and for their full value, and with a firm conviction that he was authorized by a power of attorney, and the blank endorsement of the plaintiff, to dispose of them. The cause was heard upon the pleadings and a decree
 
 pro eonfesso
 
 against Love.
 

 The record in the District Court at New Orleans in the suit between Love and Hodge, appended to the bill, does not contain evidence applicable to this cause. The parties to that suit were different, and the petition and answer are signed by counsel, and not by the parties, and cannot be resorted to for admissions of the respective parties. (Boileau
 
 v.
 
 Ruttlin, 2 Ex., 665.) There is ho. evidence of the existence of a power of 'attorney from the plaintiff to Love, except that contained in the letter of Love before referred to. If that statement is at all admissible, it is insufficient, to establish the fact. The letter was written in "1844, after Love had violated his obligation as a faithful agent, and in reply, to reproaches of the plaintiff. In
 
 *405
 
 that letter he promises to restore to the plaintiff’ these or other certificates. There is no evidence of any fulfilment of this promise. He hás failed to produce a power of attorney, or any .letters which authorize his sale to,his co-defendant. The- witesses of the contract between him and the decedent (Andrew Hodge) have not bee.n examined. These circumstances raise-a strong presumption against the verity of his statement andeprive his letter of any probative force. The title of the defendant therefore depends upon the effect Jo be given to the endorsement of the certificates in blank by the plaintiff, and their deposit with Love. The question is, was. he invested with such a title that a
 
 bona fide
 
 purchaser, having no notice of its;infirmity, will be protected against a latent defect? The law merchant accords such protection to a holder of a bill of exchange taken in.the course of business for value, and with out notice ; and legislation in Great Britain and some of the. States of the Union has extended to the same class of persona similar protection in other contracts:
 

 But this concession is made for the security and convenience,' if not to the necessities and wants, of commerce, and is not to be extended beyond them. It is a departure from the fundamental principle of property, which secures the title of the original-owner against a wrongful disposition by another person, and which does not permit one to'transfer a better title than he has. The party who claims the benefit of the exception to this principle must come within all the conditions on which it depends. In the case of bills of exchange that have originated in fraud or illegality, the holder is bound to establish that he is not an accessory to the illegal or fraudulent design, but a holder- for value. If the bill is taken out of the course of trade, as overdue, or with notice, the rights of the holder are subjected to the operation of the general rule. In Ashurst
 
 v.
 
 The Official Manager of the Bank of Australia, 37 L. and Eq. R., 195, Justice Erle says: “It seems to me extremely .important to draw the line clearly between negotiable instruments, properly so called, and ordinary chattels, which are transferable; by delivery, though the transferrer can only pass such title as he had. As to n'egotiable instruments, during their, currency, delivery
 
 *406
 
 to a
 
 bona fide
 
 holder for value gives a title, even though the transferrer should have acquired the instrument by theft; but after maturity the instrument becomes in effect a chattel only in the sense I have mentioned.” "When the instrument is one which by law is not negotiable, or when the negotiability has been restricted by the parties, the rule of the. law merchant has no application. The loss of the instrument with the name of the payee upon it, or its transfer by a faithless agent, does not impair the title of the owner. Nor can a purchaser safely draw any conclusion from the existence of an endorsement on such a paper that the holder is entitled to sell or to discount it. (Birdeback
 
 v.
 
 Wilkins, 10 Harris, 26; Ames
 
 v.
 
 Drew, 11 Foster, 475; Symonds
 
 v.
 
 Atkinson, 37 L. and Eq., 585; 25 L. and Eq., 318.) Nor can the holder write an assignment or guarantee not authorized by the endorser. (4 Duer, 45; 25 L. and Eq., 19; 6 Harris, 434.) This doctrine has been applied to determine conflicting claims to public securities which were not negotiable on their face, though the subject of frequent transfers.
 

 The suit of Toukin
 
 v.
 
 Fuller (3 Doug., 300) was for four victualling bills drawn by commissioners of the victualling office on their treasurer, in favor of their creditor. These were sent to an agent with a power of attorney, “ to receive money and give receipts and discharges,” and who pledged them for an advance of ,money. Lord Mansfield, said the only question is, who has the right of property in this bill? It must be the plaintiff’s, unless he has done something to entitle another. It is deposited with the defendant by one who hadit under a limited power, of attorney. If the plaintiff had ever consented to the disposal of the bill, he would not be allowed to object, nor would he if the money had ever come to his use. But here there is no such pretence.
 

 Glynn
 
 v.
 
 Baker (13 East., 509) was a suit for bonds of the East India Company, payable to their treasurer, and sold with his endorsement. Le Blanc, Justice, said:
 

 “Here are persons intrusted with the securities of A and B, who part with the securities of A, and, when called on for them, give the securities- of B. That difBculty can. only be
 
 *407
 
 met by assimilating such securities to cash, which, whether it has an ear-mark set upon it or not, if passed by the person in-trusted with it to a
 
 bona fide
 
 holder for valuable consideration, without notice, cannot be recovered by the rightful owner; but how does the similitude hold ? ”
 

 And Lord Ellenborough said, “ any individual might as well make his bond negotiable.”
 

 The case of Dunn
 
 v.
 
 Commercial Bank of Buffalo (11 Barb., 580) originated in the refusal of that bank to allow a transfer of stock on the books of the bank, which was transferable by the holder of the certificate or his representative.
 

 The plaintiff had the certificate and a blank assignment, and a blank power of attorney, and claimed to make the transfer. The court denied that certificates of stock in reference to negotiability are placed on the same ground as bills of exchange, and declare that it is incumbent on a party claiming under such a transfer to prove the contract or consideration. In Menard
 
 v.
 
 Shaw, comptroller, (5 Texas R., 334,) the Supreme Court of that State decide that the agency of the payee named in certificates like the present is indispensable to a legal transfer on the books of the State, and that a forced sale was therefore inoperative. The decision of Baldwin
 
 v.
 
 Ely (9 How., 273) does not sanction the claim of the defendants.
 

 The certificates which were the subject of controversy were issued, under an act of Congress, to a person or his assigns.
 

 The ordinary form of assignment was a blank endorsement, and this had been recognised as sufficient at the Treasury of the United States, and in the ordinary, traffic in the community.
 

 The defendant proved that he had paid value for them. In the cases cited from Douglas and East, the judges stated that the existence of similar facts might give another aspect to the claims of the defendants in these cases. In the case before us, the certificates were transferable, in terms only, in a single mode.'
 

 There was no evidence that a transfer in any other form than that prescribed had ever been recognised.
 

 We
 
 have considered this cause upon the assumption that the defendant was a holder for value.
 

 
 *408
 
 There is no statement in the answer of the consideration paid to Love for these certificates, nor of the time, .place, and circumstances, of the contract between him and the defendant’s testator. It appears that the plaintiff did not direct their sale or transfer, and that they were not disposed of on his account; and if there had been a power of attorney containing an authority to sell, the circumstances would have imposed upon the defendant the necessity of showing there was bo collusion with Love., Upon the case as presented, the court is. constrained to reverse the decree of the Circuit Court, dismiss ing the plaintiff’s bill. But the case is presented in an unsatisfactory manner.
 

 The transaction between Love and the decedent (Hodge) has not been exhibited to the cqurt, although parties fully cognizant of it are before the court.
 

 We have concluded to remand the cause to the Circuit Court, with directions to allow the parties to amend the pleadings, and to take testimony, if they should be so advised. .