[No. 1293.]

JOSEPH FREY, ET AL., RESPONDENTS; *v.* WM. THOMPSON, ET AL., APPELLANTS.

ASSUMPSIT — MONEY HAD AND RECEIVED — PLEA OF PAYMENT — EVIDENCE.—T., as trustee for numerous creditors, sued for and collected divers claims against the Reno Savings Bank.   Two creditors sent their claims to him, one evidenced by a bank book, and the other by a draft, through W., another creditor.   These claims were sued upon and collected by T. as independent and separate demands.   In an action against T. to recover the amount by him collected he offered himself as a witness to testify that at the time he received the claims W. represented himself to be the owner thereof and that he had paid W. the full amount due on said bank book and draft: *Held,* that the court properly excluded said testimony.

IDEM — STIPULATION — PURCHASE FOR VALUE — ACCOUNTS OVERDUE — TRUSTEE.—*Held,* that the transaction between T. and W. was immaterial to the issues presented by the stipulation (see opinion);) that T. having received the bank book and draft after their dishonor was not a purchaser for value; but a mere trustee for the collection of the demands, and was not in a position to assert any title thereto as against the true owners thereof.

APPEAL from the District Court of the State of Nevada, Washoe County.

R. R. BIGELOW, District Judge.

The facts are stated in the opinion.

*M. N. Stone*, for Appellant.

I. The court erred in refusing a new trial as to the demand of Morgan Williams.

II. The delivery of the account book to deceased vested in him the title, and clothed him with full power to transfer the demand against the bank to defendant, Thompson. Its delivery was sufficient to authorize the enforcement of the demand against the bank without a written assignment. (1 Pars. Con., Sec. 229; *Risley* v. *Phœnix Bank*, 83 N. Y. 318; 38 Am. Rep. 421; *Taft* v. *Bowker*, 132 Mass. 277.)

III. If it be assumed that defendant's position was that of a sub-agent under William Williams in the transaction, he was responsible alone to deceased or the administratrix of his estate for any sum he collected on the account from the stockholders of the bank. (Ev. Ag. 249, 317, 318; Storey Ag., Secs. 201, 217 a, 286; *Pownall* v. *Bair*, 78 Pa. St. 403.)

IV. The court erred in refusing a new trial as to the claim of Hyer.

The draft, although protested for non-payment by the bank and overdue when it was received, was still negotiable paper, the title to which passed by endorsement from Scholl and Hyer to Williams and from Williams to Thompson. (1 Par. N. & B., 263, 264; *Baxter* v. *Little*, 6 Met. 7; 39 Am. Dec. 707; *Mudd* v. *Harper*, 1 Md. 110; 54 Am. Dec. 644; *Leavitt* v. *Putnam*, 3 N. Y. 494; 53 Am. Dec. 322; *Annan* v. *Houck*, 4 Gill, 325; 45 Am. Dec. 133; *Proctor* v. *McCall*, 2 Bail. (S. C.) 298; 23 Am. Dec. 135; *Nichols* v. *Parsons*, 6 N. H. 30; 23 Am. Dec. 706.)

*Thos. E. Haydon*, *S. D. King* and *R. H. Lindsay*, for Respondents.

I. A bank account evidenced by a pass-book, or otherwise, is not a negotiable obligation; and a bill of exchange upon which presentment and demand of payment has been made, and payment refused, and such bill protested for non-payment, is dishonored and had ceased to be negotiable paper before its

transfer to Thompson. He knew he could only obtain title to either of such demands from the lawful owner thereof. (*Foley* v. *Smith,* 6 Wall. 492; *Combs* v. *Hodge,* 21 How. 397; *Texas* v. *White,* 7 Wall. 700; *Andrews* v. *Pond,* 13 Pet. 65; *Bercich* v. *Marye,* 9 Nev. 317; Benj. Sales, 7, 8; *Fowler* v. *Brantley,* 14 Pet. 321.

II. Under the pleadings, Thompson was not a purchaser for value; but a mere trustee for the collection of the accounts. (*Harpham* v. *Hayes,* 30 Ill. 404; *Long* v. *Rhawn,* 75 Pa. St. 128.)

By the Court, HAWLEY, C. J.:

This action was brought by several parties to secure a settlement of the accounts collected by the defendant Thompson, as a trustee for plaintiffs and other persons, in the suit of *Thompson* v. *Reno Savings Bank.* The claims and demands of several of the plaintiffs were compromised, and the suit was dismissed as to all the plaintiffs except Morgan Williams and W. W. Scholl. As to their claims and demands a stipulation was made as follows: "As to the plaintiff Morgan Williams, it is stipulated that this action shall stand, to be disposed of upon the following issues and theory: If the proceeds of the claim of Morgan Williams recovered by said William Thompson, as assignee, in his action against the Reno Savings Bank, * * * still remains the property and beneficial right of said Morgan Williams, then said Williams shall have judgment against said William Thompson for six hundred and eighty-four dollars and sixty-six cents, together with his costs incurred in this action. In case said Williams is not now such beneficial owner, then said Thompson shall have judgment for his costs herein against said Williams." "In respect to the plaintiff, W. W. Scholl, it is stipulated that this action shall stand; that D. C. Hyer, or any one claiming to own beneficially the amount for which William Thompson sued, as subsequent assignee of said Scholl, and direct assignee of William Williams, deceased, may be substituted as plaintiff in lieu of said Scholl; and that the cause, as between said Thompson and said substituted plaintiff, shall be determined by ascertaining, under the facts presented, who was owner or is owner, or whom Thompson was entitled to deal with as owner, of the foreign bill of exchange issued to said Scholl, upon which the claim against said Reno Savings

Bank was based by said Thompson as such assignee. The question between them to be submitted to the court under the evidence to be offered by the parties is whether the defendant Thompson, or the substituted plaintiff Hyer, has the better right to the proceeds of such bill of exchange. If the court should find that said Hyer has the better right, judgment shall be entered in his favor against said Thompson for the sum of two hundred and fifty-three dollars and fifty cents and his costs of suit. If judgment thereon should be rendered for said Thompson on said claim, it shall be with costs against said D. C. Hyer."

From the testimony it appears that after the failure of the Reno Savings Bank a committee, of which Jerry Schooling was one, was appointed to take assignments and bring suit on behalf of the creditors of the bank to recover so much of the amounts due from the bank as could be collected; that the creditors were to advance five per cent. of their respective claims in order to pay the expenses of such litigation; that Morgan Williams and William Williams were brothers, residing at Susanville, Lassen county, California; that each of them had individual claims and demands against the bank; that the claim of William Williams amounted to four thousand seven hundred and eighty-nine dollars, and the claim of Morgan Williams to one thousand three hundred and sixty-nine dollars and thirty-three cents; that, in the fall of 1880, Morgan Williams sent his bank-book by his brother William, with five per cent. in cash, to be delivered to Jerry Schooling, as one of the committee, to be jointly sued upon with the claims of the other creditors of the bank; that the committee failed to act, and the said bank-book and account of Morgan Williams was, by his brother William, delivered to the defendant Thompson, who, as the assignee of said Morgan Williams and some fifty or more persons, brought suit and recovered judgment thereon against the bank; that the claim of Morgan Williams was delivered to Thompson for the purpose of collection; that no portion of the amount collected thereon by Thompson has been paid to Morgan Williams,—the said Thompson claiming that William Williams was the owner of the said claim, and that he had settled with the administratrix of the estate of William Williams. (Said Williams died in 1883.)

The claim of D. C. Hyer is based upon a bill of exchange

payable to W. W. Scholl or his order, upon the Anglo-California Bank, at San Francisco, Cal. Before presentation to that bank W. W. Scholl sold the bill of exchange for a valuable consideration to D. C. Hyer. The Anglo-California Bank, upon presentation, refused payment of said bill of exchange, and the same was duly protested, and afterwards returned to D. C. Hyer, who delivered it to William Williams, with five per cent. cash, for the same object and purpose as before stated in relation to the claim of Morgan Williams.

The court found, and the finding is sustained by the evidence, " that said William Williams had no other right, title, or interest in and to the claims of said Morgan Williams and D. C. Hyer * * * than as a carrier for and agent of said Morgan Williams and D. C. Hyer, to transmit said claims and the five per cent. thereon to pay expenses of litigation of said joint common suit or suits by one plaintiff or committee of plaintiffs; that he paid no consideration therefor, and had no transfer thereof; that said William Thompson paid no consideration therefor, and had no interest therein, except as an assignee for collection of said claims."

From this statement of the testimony, and findings of the court thereon, it is evident that, by the terms of the stipulation, Morgan Williams and D. C. Hyer are entitled to a judgment in their favor. The respective claims were received by the defendant Thompson for the purpose of collecting the same for the use and benefit of the true owners thereof. The conclusion of law, upon the facts stated, as found by the court, " that said Morgan Williams and D. C. Hyer, at the time of the delivery and transfer of such claims to said William Thompson, were the *bona fide* owners therof, have never been divested in any manner of their beneficial interest therein, and are each now entitled to the beneficial interest in their respective claims," is too clear to admit of any controversy, and requires no elaboration or citation of authorities. It is, however, claimed by appellant Thompson that the court erred in refusing to permit him to testify to the transactions between himself and William Williams, (now deceased,) relative to the bank account and draft; that at the time he received said claims the said William Williams represented himself as sole owner of said claims, and that he had paid to the administratrix of the estate of William

Williams, deceased, the full amount due on said account and draft.

It is apparent that under the stipulation the court did not err in excluding the offered testimony. The transaction, whatever it was, between William Williams and Thompson, was wholly immaterial to the issues presented by the stipulation. Thompson received the bank book and draft after their dishonor. He was not a purchaser for value, but a mere trustee of the true owners for the collection of the demands. He brought suit against the Reno Savings Bank as the assignee of Morgan Williams, as the assignee of W. W. Scholl, and as the assignee of William Williams, and he should not now be heard to say that William Williams represented himself at the time of the delivery of said claims as being the owner thereof. Having taken the account and bill of exchange, overdue and dishonored, from a person intrusted by the owners to deliver it, for the purpose of collection only, he is not in a position to assert any title thereto as against the true owners thereof. The law-merchant accords protection to a *bona fide* purchaser of a bill of exchange taken in the due course of business, for value, without notice of any infirmity of title. "But this concession is made for the security and convenience, if not to the necessities and wants, of commerce, and is not to be extended beyond them. It is a departure from the fundamental principle of property, which secures the title of the original owner against a wrongful disposition by another person, and which does not permit one to transfer a better title than he has. The party who claims the benefit of the exception to this principle must come within all the conditions on which it depends. * * * If the bill is taken out of the course of trade as overdue, or with notice, the rights of the holder are subjected to the operation of the general rule." (*Combs* v. *Hodge*, 21 How. 405, and authorities cited in respondent's brief.)

The complaint in this action avers that the demand due from the Reno Savings Bank to Morgan Williams was one thousand three hundred and sixty-nine dollars and thirty-three cents; that the claim of William Williams against the bank was four thousand seven hundred and eighty-nine dollars. This was notice to Thompson, not only that Morgan Williams claimed to be the owner of the demand for one thousand three hundred and sixty-nine dollars and thirty-three cents, but that the estate

of William Williams made no claim thereto, and he could not thereafter set up the defense of payment to the estate. The claim of William Williams for four thousand seven hundred and eighty-nine dollars does not embrace the amount of the draft or of the account herein sued upon by W. W. Scholl and Morgan Williams. The assignment and transfer by the administratrix of William Williams, deceased, to Thompson, authorizing him to receive the *pro rata* due to the estate, cannot, upon any legal grounds, be so construed as to embrace the demands of Morgan Williams or D. C. Hyer, or any demands except that of William Williams for four thousand seven hundred and eighty-nine dollars.

Objection is made to the right of Hyer to recover upon the ground that W. W. Scholl was only named in the caption of the complaint as one of the plaintiffs, and that no demand is made in the averments of the complaint for any specific claim or amount. This suit was brought for the benefit of all the plaintiffs named therein, to declare and enforce a trust against appellant Thompson, and for the appointment of a new trustee. It is, perhaps, doubtful whether there would have been any merit in this objection if it had been raised in the court below at the proper time; but we are not called upon to consider or decide the question, as the objection was waived by the stipulation, which declares what the issues to be tried are, and what the judgment upon the issues thus made shall be. From the testimony it is clear, as before mentioned, that Hyer's right to participate in this suit, and to receive a *pro rata* share of the five hundred dollar draft issued to Scholl, does not arise out of the claim and cause of action of the estate of William Williams, deceased; as that cause of action is set forth for four thousand seven hundred and eighty-nine dollars, and does not embrace the five hundred dollars, as plainly appears from the averments in the complaint in the original suit brought by Thompson against the Reno Savings Bank, wherein the claim of William Williams is set forth as four thousand seven hundred and eight-nine dollars, precisely the amount set forth in the complaint in this action, and the claim of Morgan Williams for one thousand three hundred and sixty-three dollars and thirty-three cents, and W. W. Scholl for five hundred dollars, were, as before stated, set out as separate and independent claims.

The judgment of the district court is affirmed.