## MAINE NORTHWESTERN DEVELOPMENT CO. v. NORTHWESTERN COMMERCIAL CO.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1917. Rehearing Denied March 19, 1917.)

### No. 2773.

1. APPEAL AND ERROR ☞3—FORM OF REVIEW—EQUITABLE DEFENSE IN ACTION AT LAW.

Under Judicial Code, § 274b, as added by Act March 3, 1915, c. 90, 38 Stat. 956, providing that in actions at law equitable defenses may be interposed by answer, that review of the judgment or decree in such case shall be regulated by rule of court, and that, "whether such review be sought by writ of error or by appeal, the appellate court shall have full power to render such judgment upon the record as law and justice shall require," in the absence of a rule of court to the contrary, it is not important whether such a case is tried by legal or equitable-procedure, or whether it is reviewed on writ of error or appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 8–24.]

2. EVIDENCE ☞209—ADMISSIONS—STIPULATION OF COUNSEL.

A stipulation made by his attorneys relating to amendments to pleadings, which are subsequently superseded by further amendments, is not evidence against a party as to any material fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 726–728.]

3. CORPORATIONS ☞432(12)—LIABILITY FOR STOCK SUBSCRIPTION—REPRESENTATION BY OFFICERS.

Evidence *held* to sustain the verdict of a jury finding that a subscription by a corporation to the stock of another corporation was invalid and not enforceable, on the ground that it was made by the president without authority, and was not ratified, but repudiated, by the directors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1737, 1743, 1762.]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Action at law by the Maine Northwestern Development Company against the Northwestern Commercial Company. Judgment for defendant, and plaintiff appeals. Affirmed.

See, also, 213 Fed. 103; 228 Fed. 791.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The agreed statement of the case, made by the parties and certified as correct by the trial judge, shows, among other things, that the original complaint was filed in the court below March 29, 1912, to which an amended answer was filed March 17, 1913, and a third amended answer September 24, 1914. The next year, and on the 31st day of July thereof, the plaintiff filed an amended complaint, to which on September 20, 1915, an amended answer was filed, to which latter the plaintiff filed a reply October 25, 1915. Upon the pleadings so filed in 1915 the case was tried before the court sitting with a jury.

That amended complaint alleges, among other things, that the plaintiff (appellant here) is a corporation of the state of Maine, with a capital stock of $6,250,000—divided into two classes, to wit: One class, $2,500,000 preferred stock, divided into 500,000 shares, of the par value of $5 each; the other class, $3,750,000 common stock, divided into 750,000 shares, of the par value of $5 each—organized for this, among other purposes: "To purchase or otherwise acquire from John Rosene 171 certain mining claims and certain water rights in Alaska, and as payment therefor to issue and deliver $3,750,000 par value of fully paid and nonassessable shares in the common stock of the corporation, and to pay the sum of $245,000 in cash, on the terms of an agreement to be authorized by its board of directors."

The amended complaint further alleges that on March 20, 1906, the plaintiff purchased from Rosene the mining claims and water rights mentioned for the sum of $3,995,000, and as payment therefor, on March 30, 1906, issued and delivered to the order of Rosene $3,750,000 par value of full-paid and nonassessable shares in its common stock and thereafter paid the sum of $245,000 in cash on the terms of an agreement authorized by its board of directors, which said mining claims and water rights were in the judgment of the plaintiff's directors necessary for its business, and which said sum of $3,995,000 was in the honest and bona fide judgment of plaintiff's directors the fair and reasonable value of the mining claims and water rights; that the said purchase was authorized by a resolution duly adopted by the unanimous vote of the board of directors of the plaintiff, at a meeting thereof duly called and held on March 20, 1906, at which all of the directors were present and participated; that the said directors, together with the said Rosene, were on the day last named the owners and holders of all of the capital stock of the plaintiff corporation then issued and outstanding, and said purchase was thereafter ratified, approved, and confirmed by the unanimous vote of all of the stockholders of the plaintiff, at a meeting of such stockholders duly called and held on March 29, 1906, at Portland, Me., at which meeting all of the capital stock of the plaintiff then issued and outstanding was represented and voted; that on March 21, 1906, the said purchase was completed by the conveyance of Rosene to the plaintiff of the mining claims and water rights; that thereafter, and prior to April 4, 1906, of said fully paid common stock so issued, 499,989 shares were by Rosene deposited with A. A. Housman & Co., for delivery to the order of the several subscribers to the preferred shares of capital stock of plaintiff, at the rate of one share of common for every $5 paid on account of their subscriptions, respectively, and ever since the date last mentioned up to May 1, 1909, Housman & Co. have been ready, able, and willing, and ever since May 1, 1909, the plaintiff, as assignee of Housman & Co. of said common shares last mentioned solely for the purpose of delivery as aforesaid, has been ready, able, and willing, to deliver common shares of plaintiff's capital stock to the order of the subscribers to the preferred shares of plaintiff's capital stock, at the rate aforesaid; that plaintiff at all times since April 4, 1906, has been and is now ready, able, and willing to issue and deliver to the defendant to the action its preferred stock to the amount of its subscription thereto, upon payment of said subscription; that during all of the times mentioned the defendant was and still is a corporation of the state of Washington, and that on April 4, 1906, by its subscription agreement in form common to all subscribers, for value received, subscribed to $250,000 of the $2,500,000 preferred stock of the plaintiff corporation and thereby agreed to pay therefor as follows: Twenty per cent. of said subscription on signing, 10 per cent. thereon on July 15, 1906, and the residue thereof from time to time as called for by the directors of the plaintiff on 30 days' notice: Provided that not over 50 per cent. of said subscription should be payable during the year

1906—a copy of which said alleged subscription agreement is annexed to the amended complaint and made a part thereof.

The amended complaint further alleges that between April 4 and October 17, 1906, both inclusive, the defendant paid the plaintiff on account of its said subscription to said preferred stock $125,000, which amount was credited thereon from time to time as it was received, for which the plaintiff issued to the defendant 25,000 shares of the preferred stock, which the defendant received; that between April 4 and November 9, 1906, common shares of plaintiff's capital stock deposited with Housman & Co. were delivered to the order of the defendant as a subscriber to said preferred shares, at the rate of one share of common stock for every $5 paid by the defendant on account of its said subscription to the preferred stock; that on January 15, 1912, the plaintiff by resolution adopted at an adjourned meeting of a special meeting of its stockholders duly called and held January 10, 1912, and by resolution of its board of directors at a special meeting thereof duly called and held January 22, 1912, duly levied and called for assessments on the residue of the subscriptions to its preferred capital stock, payable on or before March 12, 1912, to the treasurer of the plaintiff, in care of either A. A. Housman & Co., at 20 Broad street, New York City, or Union Savings & Trust Company, Seattle, Wash., as follows: Assessment No. 1, of 20 per cent., on the preferred shares of said capital stock and on the subscriptions thereto; assessment No. 2, of 50 per cent., on the preferred shares of said capital stock and on the subscriptions thereto—and thereby directed that 30 days' written notice thereof be given subscribers to said preferred shares, and that so much of such subscription to the preferred shares in excess of 30 per cent. thereof agreed to be paid as therein provided, and not exceeding 50 per cent. thereof, as had theretofore been paid by subscribers thereto, be credited upon said assessment No. 1 against said preferred shares so subscribed and upon which said excess had been so paid; and that so much of each subscription to said preferred shares in excess of 50 per cent. thereof agreed to be paid as in such subscription agreement provided as had theretofore been paid to plaintiff by subscribers thereto, be credited upon said assessment No. 2 against the preferred shares so subscribed, and upon which such amount in excess of 50 per cent. had been so paid.

The amended complaint further alleges that thereafter, at a special meeting of the stockholders of the plaintiff duly called and held March 1, 1912, at its office in the city of Portland, Me., the acts of its stockholders at the special meeting thereof on January 15, 1912, and the acts of its board of directors in adopting the resolution of January 22, 1912, in levying and calling of said assessments, directing 30 days' notice thereof, fixing the time when and the place where and the person to whom the same should be payable, and directing so much of said subscriptions to said preferred stock in excess of 30 per cent. as had theretofore been paid be credited upon said assessments aforesaid, were duly ratified and confirmed; that on February 8, 1912, the plaintiff gave the defendant 30 days' written notice of said calls and assessments, of the time when, place where, and person to whom payments thereof were payable, and of the credit on assessment No. 1 on defendant's subscription of a sum equal to the sum of said assessment No. 1 of defendant's subscription theretofore paid by defendant on said subscription, and that the defendant failed and refused, and still fails and refuses to pay said assessment No. 2 on its said subscription to said preferred stock, and that on March 13, 1913, the plaintiff by resolution of its board of directors authorized its president to bring suit therefor.

The amended answer of the defendant to the amended complaint put in issue those of its allegations charging liability of the defendant, and, among several affirmative defenses, set up that Rosene was one of the promoters and the managing director of the plaintiff corporation, and had entered into certain contracts with certain other promoters of the plaintiff and with the plaintiff, whereby it was agreed, among other things, that Rosene and his associate promoters would organize the plaintiff corporation; that Rosene and certain other persons were the owners of the mining claims, which they were desirous of selling, and which claims were alleged to have been of but little value, and that it was agreed between Rosene and his associate owners of the property

and the other promoters of the plaintiff corporation that when said corporation was organized the said mining property would be conveyed to Rosene by the other parties interested therein, and that Rosene would thereupon convey the same to the plaintiff corporation, and should be paid therefor in full payment for the property the sum of $245,000; that $1,250,000 par value of the capital stock of the plaintiff, known as common stock, should be issued to Rosene, ostensibly as a part payment for the property, but in reality as a bonus and gift to Rosene and the other promoters of the plaintiff corporation; that it was further understood and agreed, and was a part of the same arrangement, that Rosene would provide the $245,000 to be paid to himself for the property, by subscribing for preferred shares of the plaintiff corporation on behalf of the defendant (of which defendant company Rosene is alleged to have been also president and managing director) to the amount of $250,000, and that the money realized on such subscription should and would be appropriated by the plaintiff company to the payment to Rosene of said $245,000, and that the subscription on behalf of the defendant referred to in the complaint was made by Rosene and accepted by the plaintiff company pursuant to that agreement and understanding by him with the plaintiff and its promoters, and in furtherance thereof and for his own personal interest and of those of said other promoters, and not otherwise; that, after the organization of the plaintiff corporation, it and its officers and directors had full knowledge of those facts, understandings, and agreements, and that the plaintiff became a party thereto; that said subscription on behalf of the defendant was accepted by the plaintiff with full knowledge of all of those facts, and that pursuant to said agreement the said common stock of plaintiff was issued by the plaintiff to Rosene and his copromoters; that the defendant did not authorize nor approve said subscription, and was ignorant of the secret understandings, agreements, and interests of Rosene until it acquired knowledge thereof during the years 1910 or 1911; that at a meeting of the board of trustees of the defendant company in April, 1906, at which Rosene was present, when said defendant was first notified that Rosene had made the alleged subscription, the board of trustees of the defendant immediately repudiated the same, and verbal notice thereof was immediately thereafter given to the plaintiff corporation through its president and treasurer; that the defendant on various other occasions thereafter, whenever the matter of the subscription sued on was mentioned or brought before it, consistently and persistently repudiated the same and disclaimed any liability thereunder; that Rosene conveyed the mining claims to the plaintiff pursuant to the agreements and understandings alleged by the defendant, and that he, without the knowledge or consent of the defendant, caused moneys of the defendant aggregating $125,000 to be turned over to the plaintiff on said alleged subscription; and that the plaintiff, pursuant to said understandings and agreements, turned over said money, or a large part thereof, to the said Rosene.

The trial resulted in a verdict and judgment for the defendant, and the case is brought here by the plaintiff by appeal.

William H. Gorham, of Seattle, Wash., for appellant.

W. H. Bogle, Carroll B. Graves, F. T. Merritt, and Lawrence Bogle, all of Seattle, Wash., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). [1] The appellee has interposed a motion to dismiss the appeal on the ground that the appellant has mistaken its remedy, and that this court is without power to review the case upon appeal. In view of the provisions of the act of Congress approved March 3, 1915 (38 Stat. 956, c. 90), adding to the Judicial Code, among others, section 274b, we do not regard it as important whether the matters set up in the affirmative defense referred to in the statement constitute an equitable defense, or were properly tried and disposed of at law. That section is as follows:

"Sec. 274b. That in all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court. The defendant shall have the same rights in such case as if he had filed a bill embodying the defense of [or] seeking the relief prayed for in such answer or plea. Equitable relief respecting the subject-matter of the suit may thus be obtained by answer or plea. In case affirmative relief is prayed in such answer or plea, the plaintiff shall file a replication. Review of the judgment or decree entered in such case shall be regulated by rule of court. Whether such review be sought by writ of error or by appeal the appellate court shall have full power to render such judgment upon the records as law and justice shall require."

In the absence of a rule of court regulating the method of procedure, the court is thus given "full power to render such judgment upon the record as law and justice shall require." There being no such rule to the contrary, we do not think we would be justified in dismissing the appeal. The motion is denied.

On the trial no request was made on behalf of the plaintiff for a directed verdict, but upon the conclusion of all of the evidence the case was submitted to the jury upon the merits and under full instructions from the court, to which no exception was taken on behalf of the plaintiff, although the record shows that upon the conclusion of the court's instructions the plaintiff asked that instruction numbered 16 as filed by it be given, in response to which request the record shows the following proceedings, and those only:

"The Court: The plaintiff requests me to give this instruction. This is in substance what I have stated to you, but I will read it: The plaintiff had a legal right to issue all of its common stock to John Rosene in part consideration of the conveyance by Rosene to it of certain mining properties and water rights, provided that all of its then stock subscribers concurred therein. And if you find that all of plaintiff's common stock was issued to John Rosene for such properties, with the concurrence of all its then stock subscribers, and all of the holders of its capital stock then outstanding—I will just modify that—provided they acted in good faith in the matter, and were not guilty of actual fraud in the transactions, as I have already instructed you, then such issue was legal.

"Mr. Gorham: We desire now to note an exception, if the court please, for the failure to give particularly instruction No. 16 as among the requests of the plaintiff."

The agreed and certified statement of the case not containing such requested instruction, it is manifestly impossible for us to determine or consider whether or not the request should have been granted, though it is obvious from the proceedings set out that the instruction was to some extent modified by the court, and in part at least given.

Of the 17 assignments of error, the first relates to a ruling of the court not excepted to, the third to the introduction in evidence of certain minutes of the proceedings of a corporation which are not disclosed by the agreed and certified statement of the case, and the fourth assignment relates to the alleged ruling of the court upon an objection to a question which the record fails to show was even asked, much less objected to.

Complaint is made by the second assignment of error of the refusal of the court to admit in evidence a written stipulation signed by the attorneys of the respective parties, the first, second, and fourth sub-

divisions of which only are claimed to have been pertinent to the cause. The stipulation is as follows:

"It is hereby stipulated by and between the parties hereto:

"(1) That the plaintiff's complaint in the above-entitled cause may be amended by adding to paragraph X of the original thereof on file in the above-entitled cause, as follows: 'That between the 4th day of April, 1906, and the 9th day of November, 1906, upon payment by defendant to plaintiff of said $125,000 as aforesaid, plaintiff issued to defendant and defendant accepted therefor 25,000 shares of said preferred stock.'

"(2) That defendant's second amended answer heretofore served and filed in said cause may be amended by adding to paragraph numbered I of the said second amended answer the following: 'Except that defendant admits that between April 4, 1906, and November 9, 1906, plaintiff issued to and defendant accepted 25,000 shares of the preferred capital stock of plaintiff for the $125,000 which said John Rosene had paid out of the funds of this defendant; and defendant denies that any of said preferred stock was issued to or accepted by defendant otherwise than as hereinabove expressly admitted.' * * *

"(4) That said second amended answer as thus amended shall be considered and stand.as defendant's answer to said complaint as so amended.

"Dated Seattle, Wash., May 11, 1914."

The evidence shows that the 25,000 shares of the preferred stock of the plaintiff (accepted by the defendant under subscription made by virtue of a resolution of its board of directors adopted September 6, 1906, and hereinafter referred to) were theretofore issued to A. A. Housman & Co.; and by them assigned to the defendant September 24, 1907. But the contention of plaintiff's counsel was and is that the fact is overcome and the defendant bound by that stipulation of its attorneys respecting amendments to then existing pleadings, subsequently superseded by pleadings upon which the case was tried.

[2] While a bill or answer in equity, or a pleading in an action at law, sworn to by a party, is competent evidence against him in another suit as a solemn admission by him of the truth of the facts stated (Pope v. Allis, 115 U. S. 363, 370, 6 Sup. Ct. 69, 29 L. Ed. 393), it is clear that such a pleading, not under oath, nor signed by the party, is not evidence of any fact material to the party's cause (Delaware Co. v. Diebold Safe Co., 133 U. S. 473, 487, 10 Sup. Ct. 399, 33 L. Ed. 674); a fortiori is a stipulation of his attorneys regarding amendments to pleadings, subsequently superseded by other and further amendments, not evidence against the party respecting any material fact. There was, therefore, no error in the ruling rejecting the stipulation offered.

The action, as has been seen, was based on a subscription alleged to have been made by the defendant on the 4th day of April, 1906, for preferred stock of the plaintiff, in the amount of $250,000. Moritz Thomsen, H. W. Treat, J. D. Trenholme, and Capt. Jarvis were directors of the defendant, as was Rosene, who was also its president, as well as then director and president of the plaintiff. Thomsen was called as a witness and questioned by the plaintiff about a meeting of the plaintiff corporation held April 10, 1906, at which he testified, among other things, that Rosene reported the subscription he had made on behalf of the defendant on the 4th of April, 1906, for the preferred stock of the plaintiff, to the amount of $250,000, and that at the meet-

ing of April 10th, so far as the witness remembered, "every member outside of Rosene took the stand that Rosene had no legal right to subscribe, and therefore they would not recognize it, and he (Rosene) asked us as a matter of courtesy to him to not put anything in the minutes; that he (Rosene) would dispose of the stock in a few days and then call us together again; that a payment of $50,000 on that subscription was reported at that time;" that he would not say that there was any action of the board with respect to that payment, except they claimed he had no right to pay it; that his idea was that Rosene claimed that he could dispose of the stock, and he (witness) presumed that he (Rosene) knew what he was doing, and that he knew what he could do, and that he would dispose of it in a few days; that as to what was done with relation to the $50,000 he was not sure but what personally he made the remark that, if that proposition was such a good one as Rosene stated, it might be well for the company, perhaps, to keep the $50,000; that he did not know if anybody concurred in his attitude; that no action was taken upon his suggestion that the company keep the $50,000, and no motion was made or vote taken affirming or disaffirming the action of Rosene, who asked that nothing be put on the minutes, and nothing was done, except the expression of the views of the directors.

Subsequently Treat was called as a witness by the defendant, and was questioned regarding the meeting in Seattle of April 10, 1906, which he said was also attended by the attorney of the defendant. His testimony in part is thus stated in the agreed and certified statement of the case:

"That at that meeting they passed a resolution that they repudiated Mr. Rosene's subscription; didn't remember who introduced that resolution; witness might have; thought perhaps he did; was not sure; thought so though. That everybody was in favor of it, and it was carried. Mr. Rosene then said that the stock had been oversubscribed in New York, and it would be much easier for him, and it would keep him in better standing with his associates, if they did not take any action which would reflect upon 'the subscription, and begged them not to do it, and assured them that he would let the people who had subscribed in the East take the stock in their stead, and asked them for that reason to leave it off their record, and not to make any permanent record of it, and they consented to it, thought that would be the simplest way out of it, so that it was not put on the record. That they talked it over with Mr. Hartman [the attorney] at the time and he said that would be perfectly all right."

Treat was then questioned in respect to the subscription that the defendant admits to have been made by it September 5, 1906, for preferred stock of the plaintiff to the amount of $125,000, and his attention called to the two following entries from the minutes of the defendant of that date:

"The question of Mr. Rosene's subscription to the stock of the Northwestern Development Company was fully discussed, and Mr. Thomsen introduced the following resolution: 'Resolved, that the president be authorized to subscribe to the stock of the Northwestern Development Company for this company, in the sum of $125,000.' Mr. Thomsen moved the adoption of the above resolution, and the same being seconded by A. J. Trimble, the same was put to vote and unanimously adopted."

"Whereas, it was necessary to provide funds to build or purchase additional steamers for the company's use: Resolved, that the president be instructed to sell or dispose of the stock held by this company in the Northwestern Development Company down to $50,000."

Having stated that he remembered those resolutions, the witness was asked the question which is the basis of the appellant's fifth assignment of error, and which is as follows:

"State what took place before the board at the time when those resolutions were adopted."

An objection by the defendant on the ground of its incompetency was overruled, to which the plaintiff excepted, and the witness answered:

"That they had a general discussion, and looked into the accounts of both companies, and found the Northwestern Development Company owed the Northwestern Commercial Company such an amount for freight and supplies that, if they were to settle upon a $125,000 sum, it would merely square the account and make it satisfactory to both companies and start over again, as it were; so the transfers were made. There had been some transfers made in the books without coming up before them. 'He didn't think there was any cash paid for any of this stock. He thought it was merely a question of bookkeeper's transfers and journal entries; that he was the treasurer at that time; that there had not been any cash payments on this Rosene subscription that he knew of. He never knew how it was paid for. All of those things came up at that time. They found that there had been entries and cross-entries, and credits and debits, and that by making it $125,000 subscription they could nearly square the accounts, and it would seem to be the proper thing to do—a compromise arrangement—and that resolution was passed; that Mr. Perl, who kept the books, had made those entries which witness spoke of on the books; that he thought Mr. Perl was dead, he didn't know, some one had said so here (at the trial) the other day. He didn't know it before."

It is manifest, we think, that, even if the ruling be conceded to have been erroneous, the answer of the witness was without prejudice to the plaintiff, for it was in substantial accord with that of some of the testimony given by witnesses for the plaintiff, and was not in contradiction, but explanatory, of the resolution.

The sixth assignment of error is to the effect that the court erred in permitting the defendant's witness Trenholme, over the objection of the plaintiff, to be asked whether the defendant's board of directors at any time ratified any subscription made on its behalf by Rosene to the capital stock of the plaintiff. It had been shown that the minute book of the defendant showed no such ratification, and there had been testimony given that at the meeting of its board of directors April 10, 1906, the latter had repudiated the subscription made on behalf of the defendant six days before, which action, at Rosene's request, had been kept from the minutes. The evident purpose of the question was to show that there had been no ratification by the board *withheld from the minutes*—the witness having previously testified that he was present at all of its meetings. We are not prepared to hold that the ruling was erroneous.

The seventh assignment of error is based on the objection made, on the ground of incompetency, to a question propounded to the secretary and one of the directors of the defendant as to whether he had notified the president of the plaintiff company of the action of the

board of directors of the defendant of April 10, 1906, repudiating the Rosene subscription. It had been shown, and was undisputed, that Henry C. Davis was then the president of the plaintiff, and a member of the firm of Housman & Co., and was a resident of New York, but was at the time in question in Seattle. The contention of the appellant is that:

"It does not appear from the record that Davis was present at any time in Seattle on the business of plaintiff, or that he transacted, as such president, any business for the plaintiff at Seattle; his home and place of business, both as to the firm of A. A. Housman & Co. and as to the plaintiff, was in New York City;" and that, while the general rule is that notice of a fact acquired by an agent while transacting the business of his principal operates constructively as notice to his principal (Thompson, Corp. § 5189), yet the "rule is subject to the exception that where the president is totally disassociated from the company's business, as where he is on a journey, notice to him is not notice to the corporation (10 Cyc. 1059)."

The record does not bear out the statement of counsel that Davis was in Seattle on a journey, disassociated from the business of the company of which he was president, but the contrary. The testimony of the witness is that:

"He met Mr. Davis at the entrance of the Butler Hotel, and they walked into the hotel and sat down there and began talking about the Development Company, and Mr. Davis asked witness about the trouble that they were making for Mr. Rosene out here, and Mr. Davis asked witness what it was all about, and witness told him. Witness told him of the action of their trustees with reference to Rosene's subscription, told him of their action, of the trustees, with reference to this subscription of that $250,000."

There was also evidence to the effect that, while the plaintiff had an office and its directors met in New York, it also had an office in Seattle, where a large part of its business was transacted, its main business being carried on in Alaska; and it further appeared that Davis had been in Seattle for some time prior to the above conversation, held with him by the defendant's secretary and director. Manifestly Davis was a proper officer to receive the notice, and we are unable to hold that his presence in Seattle was of such a casual and unofficial character as to render the notice ineffectual. It may be added that, had the objection been directed to the ground upon which the point is made, the defendant would have been afforded an opportunity, and might have been able, to meet the objection by direct proof that the president of the plaintiff was in Seattle only on the business of his company.

[3] The remaining points on behalf of the appellant really go to the question of the sufficiency of the evidence to justify the verdict of the jury and the judgment of the trial court. Being unable to hold, after a careful consideration of the evidence, that the jury was not warranted in returning the verdict it did, and the court below in giving the judgment complained of, we find it unnecessary to consider the contention of the appellee that no recovery can be had either upon a subscription contract or upon an assessment by a corporation itself for an unpaid subscription, unless all of its stock has been subscribed for.

The judgment is affirmed.