NATIONAL BATTERY CO. v. LEVY.

No. 12121.

Circuit Court of Appeals, Eighth Circuit.

March 2, 1942.

Rehearing Denied March 26, 1942.

Warren B. King, of Minneapolis, Minn. (Freeman & King, of Minneapolis, Minn., on the brief), for appellant.

Josiah E. Brill, of Minneapolis, Minn. (Brill & Maslon, of Minneapolis, Minn., on the brief), for appellee.

Before THOMAS and JOHNSEN, Circuit Judges, and REEVES, District Judge.

THOMAS, Circuit Judge.

It is agreed by the parties that this case presents a single question, namely: Was Edward Sullivan, an employee of appellant, acting within the scope of his employment when, as a result of his alleged negligence, he and William Levy, appellee's decedent, were both killed in the same accident?

The suit was brought for damages against the employer by Levy's executrix, and the appeal is from a judgment entered upon a verdict in her favor. The question, as presented in this court, was raised in the district court (1) by motion for a directed verdict, (2) by a requested instruction, and (3) by objections to the admission of evidence.

The motion for a directed verdict was on two grounds: (1) That at the time of the accident Edward Sullivan was engaged on a mission personal and for social reasons and was not on a mission within the scope of his employment, and (2) that plaintiff failed to sustain the burden of proof. As will appear from the discussion of the requested instruction and the objection to the admission of evidence, the motion for a directed verdict is without merit. The evidence made a prima facie case for the plaintiff without reference to the refused instruction or the admission of the evidence objected to.

■ The case is controlled by Minnesota law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. The refusal of the court to give the requested instruction presents the question of what is the test under the law of Minnesota for determining whether an employee is acting within the scope of his employment in a case where he goes on a trip with a double purpose in view, one personal and the other in furtherance of his employer's business. The appellant contends that in such a case the dominant purpose of the employee controls; and in line with this contention the following instruction was requested: "If the work of the employee creates the necessity for travel, he is in the 'Course of his employment' though he is serving at the same time some purpose of his own. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk. The question is was Sullivan placed upon the highway by force of any duty owing to his employer, the Defendant National Battery Company, or was the risk of travel his own."

The court held that when two purposes for the trip concur, one to carry on the master's business and the other personal, the employee is acting within the scope of his employment. Consistent with this rule the court, without exception by appellant, instructed the jury: "Did the business which the defendant had entrusted to Mr. Sullivan * * * create any reasonable necessity, under all the circumstances in this case, for this trip * * *, and was this trip in the furtherance in any respect of the company's business? Or was this trip * * * merely one of a social nature * * *? An answer to these questions will determine * * * whether or not at the time in question Mr. Sullivan was acting within the scope of his employment."

The accident in which Sullivan and Levy lost their lives occurred on the evening of April 13, 1940. In the line of his duty Sullivan was engaged in negotiating a contract on behalf of the appellant with Levy. They were at St. Paul, Minnesota, where Levy had come by airplane from New York for that purpose. In accordance with Sullivan's instructions it was important to conclude the business speedily. On that evening Sullivan and Levy decided to drive out to a restaurant at Forest Lake some distance from St. Paul to dine and to carry on the negotiations on the trip. For this purpose they took their papers relating to the transaction with them. On the way to the restaurant the accident occurred in which they were both killed.

■ Under these circumstances the Minnesota rule is in harmony with the general rule stated in 39 C.J., page 1297, as follows:

" * * * to exonerate the master from liability it is essential that the deviation

or departure [by a servant from the strict course of duty] should be for purposes entirely personal to the servant. Where the servant is, notwithstanding the deviation, engaged in the master's business within the scope of his employment, it is immaterial that he joined with this some private business or purpose of his own."

"Nevertheless, if the servant totally departs from the master's business for a purpose exclusively his own, the master is not liable for his acts."

The application of these rules is illustrated by the following decisions of the Supreme Court of Minnesota: Sina v. Carlson, 120 Minn. 283, 139 N.W. 601; Ploetz v. Holt, 124 Minn. 169, 144 N.W. 745; Mogle v. A. W. Scott Co., 144 Minn. 173, 174 N.W. 832; Menton v. L. Patterson Mercantile Co., 145 Minn. 310, 176 N. W. 991; Behrens v. Hawkeye Oil Co., 151 Minn. 478, 187 N.W. 605; Piepho v. M. Sigbert-Awes Co., 152 Minn. 315, 188 N. W. 998, 999; Stoneman v. Washburn-Crosby Co., 153 Minn. 331, 190 N.W. 605; Robertson v. Spitler, 153 Minn. 395, 190 N.W. 992; Fostrom v. Grossman, 161 Minn. 440, 201 N.W. 929, 930; Elliason v. Western Coal & Coke Co., 162 Minn. 213, 202 N. W. 485; Vogel v. Nash-Finch Co., 196 Minn. 509, 265 N.W. 350; Loucks v. R. J. Reynolds Tobacco Co., 188 Minn. 182, 246 N.W. 893; Marcel v. Cudahy Packing Co., 186 Minn. 336, 243 N.W. 265, 267.

In the Loucks case supra [188 Minn. 182, 246 N.W. 895], speaking of the rule under consideration, the court said: "An employee's service to the employer need not be the sole cause of the particular journey upon the highway, but it must be a concurrent cause." In the Ploetz case: If at the time of the wrongful act the automobile was being used "in part" for the purpose for which it was kept by the owner, the fact that the driver may also have been using it "in part" for purposes personal to himself would not necessarily relieve the owner of liability; if "among the purposes" [124 Minn. 169, 144 N.W. 747] for which it was being used the jury might find that one purpose was for the owner the owner would be liable. In the Marcel case [186 Minn. 336, 243 N. W. 267]: "The employer was held liable, unless at the time of the wrongful act the employee "was exclusively engaged in his own affairs, that is, for his own pleasure or convenience"; that the employer is liable unless the act of the employee is

"wholly disconnected from the service of his employer."

See also Rahn v. Singer Manufacturing Co., C. C. Minn., 26 F. 912, 916, affirmed 132 U.S. 518, 10 S.Ct. 175, 33 L.Ed. 440. In this case the court said: "* * * if Corbitt combined his own business with that of the defendant, and was using the team not exclusively for his own ends, but at the same time was pursuing the defendant's business, in the service for which he was employed, then the defendant would be liable if an injury was the result of Corbitt's negligence." This seems to be a clear statement of the rule in effect in Minnesota. There was no prejudice and the court did not err in refusing the requested instruction.

The appellant complains of the admission of evidence. After the accident in which Sullivan and Levy were killed, Sullivan's dependent widow and children filed a claim for compensation under the Employers' Compensation Act of Minnesota, Mason's Minn.St.Supp.1940, § 4272-1 et seq. Under the Act the claimants were entitled to such compensation only provided Sullivan at the time of his injury was acting within the scope of his employment. The claim was settled by the appellant herein as Sullivan's employer by the payment of the full amount to which the claimants were entitled under the law, if entitled to anything.

In the instant case one of the important issues was whether Sullivan at the time of the same accident in which both men were killed was acting within the scope of his employment. The burden was upon the plaintiff to prove that he was so acting. Upon the trial plaintiff's counsel offered in evidence exhibits T and U. Exhibit T consisted of the proceedings before the Industrial Commission of Minnesota relating to the claim of Sullivan's dependents. It included (1) the findings of the Commission; (2) a stipulation of settlement between the parties; (3) a denial of liability filed by the insurance company carrying the employer's risk; (4) notice of such denial; and (5) the first report of the injury made by appellant. Exhibit U is the receipt of the claimants for the payment of the award.

The court received the exhibits only "in connection with the issue of whether or not the injury complained of in this case occurred while Mr. Sullivan was or was not acting in the course and scope of his employment and with the authority of his employer." In the instructions the jury was

advised in substance that the exhibits should be considered only in the bearing which such exhibits would have upon the question of an admission of the defendant that Sullivan was at the time of the accident acting within the course and scope of his employment. The stipulation stated that "it is the contention of the employer * * * that said injury * * * did not arise out of or during the course of the employe's employment", and that "it is the desire of the parties to peacefully settle and compromise their differences." There is no express admission by the appellant contained in any of the documents included in the exhibits that appellant was liable or that Sullivan was acting within the scope of his employment. It is the contention of appellee that the act of paying the full amount to which Sullivan's dependents were entitled under the law amounts to an implied admission against interest of the fact in issue, and that the documents were therefore admissible for the purpose for which they were received.

The question presented is whether payment or settlement of a claim of a third person injured in the same casualty is admissible as an admission against interest to the effect that the defendant's servant whose negligence caused the injury was acting within the scope of his employment.

 Under Rule 43(a)[1] of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it is the duty of the federal court to inquire whether either the federal rule or the rule prevailing in the state where the case was tried favors the admission of such evidence. If either of them does, the evidence is admissible. No decision of this court upon the identical question has been called to our attention, and our search has not discovered one. The question has been before the Court of Appeals of the Second Circuit at least twice, and that court has held that such evidence must be excluded. Paster v. Pennsylvania R. R., 2 Cir., 43 F.2d 908, 911; Hawthorne v. Eckerson Co., 2 Cir., 77

F.2d 844, 845, 847. The Seventh Circuit has also excluded such evidence. Domarek v. Bates Motor Transport Lines, Inc., 7 Cir., 93 F.2d 522, 526. The rule has been followed by the federal district court of Pennsylvania in Meek v. Miller, 38 F.Supp. 10, 12. We assume therefore that the decisions of the Second and Seventh Circuits establish the rule as the rule "applied in the courts of the United States." Further, the rule of exclusion appears to obtain generally in the highest courts of the states. See Wigmore on Evidence, § 1061; Wigmore, Supp., 1934, p. 460; 22 C.J. Evidence, § 354, p. 320.

Whether a more favorable rule has been established in Minnesota remains for consideration. Appellee contends that the exhibits are admissible in the courts of that state. Counsel rely upon the decision of the Supreme Court of Minnesota in Guile v. Greenberg, 192 Minn. 548, 257 N.W. 649, 652. In that case Guile, an employee of the Brinks Express Company, was injured while in the course of his employment in a collision between his master's truck and an automobile driven by Greenberg. He sued Greenberg for damages. Upon the trial defendant's counsel offered in evidence matter going to show that Guile had previously received workmen's compensation for the injury. The matter was received over plaintiff's objections for the purpose of showing that at the time of receiving his compensation Guile had agreed that his arm was 10 per cent disabled and his leg was 25 per cent disabled. It was contended on appeal by defendant that the agreement in the compensation proceeding as to the percentage of disability constituted an admission on the part of Guile and should be admitted as such. Guile's doctor testified that plaintiff's arm was 10 per cent disabled and his leg 25 per cent.

The Supreme Court of Minnesota held that the agreement as to the percentage of disability in the compensation case should not have been admitted because it was only

---

[1] Rule 43(a). EVIDENCE. Form and Admissibility. "In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. The competency of a witness to testify shall be determined in like manner."

corroborative of the testimony of the doctor. The court said: "Since the only effect of introducing evidence of this previous agreement was corroborative, it should not have been admitted, inasmuch as its propensities for damaging plaintiff's case were so great."

A new trial was granted on other grounds, and the court reversed the judgment for defendant with these instructions: "On the new trial, the proper procedure would seem to be to withhold this matter from the jury until the very end of the trial. If by that time plaintiff either has claimed the disability to be other than what was previously agreed to, or if plaintiff has not admitted the percentage of his disability in open court or established the same by his own case, then the proffered evidence should be received, despite its damaging effect on plaintiff's case, in the former case to serve as impeaching matter, in the latter case to serve as evidence, in the former case to contradict, in the latter case to supply a missing fact. Otherwise, for reasons herein pointed out, the matter should be excluded."

Assuming, but not deciding, that the same rule of competency applies both to the admissibility of an expressly agreed incidental fact involved in a proceeding in another tribunal and to a fact in issue but implied only from the settlement and payment of a claim filed in a proceeding pending before another tribunal, still we are of the opinion that the decision in the Guile case does not support the appellee's contention. On the other hand, we think the rule applied in the Guile case requires the exclusion of exhibits T and U in the present case. In this case, as in the Guile case, the alleged admission is corroborative of other competent and admissible evidence, evidence tending to show that Sullivan was acting within the scope and course of his employment at the time of the accident. This is true because there is substantial evidence in the record introduced by the plaintiff tending to show that at the time in question Sullivan was an employee of the defendant and that the purpose of the mission in which he was engaged was in part the transaction of defendant's business. Under the instruction given by the court and approved in this opinion as the law of Minnesota, such evidence establishes prima facie the burden upon the plaintiff to prove Sullivan's course of employment, and the admission of that fact by the defendant implied in the payment made to Sullivan's dependents is merely corroborative.

No other Minnesota case bearing upon the question under consideration has been called to our attention, and we have found none. Whether we adopt the rule applied in the Guile case or the rule applied in the federal courts as shown supra, the court erred in admitting exhibits T and U. For that reason the judgment appealed from is reversed and the case is remanded for a new trial.

REEVES, District Judge (concurring).

I concur in the able opinion of the presiding judge but feel constrained to assign a different reason for holding Exhibits T and U inadmissible.

While it is the general rule that a pleading in another action, containing an admission of a fact on a particular issue, may be used against the pleader (22 C.J. p. 333, § 374), yet the statement or admission must be precise and definite 22 C.J. p. 335, § 375), and must be authenticated by the signature of the party or verified by his oath. Maine Northwestern Development Company v. Northwestern Commercial Co., 9 Cir., 240 F. 583; Berry v. Littlefield, Alvord & Co., 54 App.D.C. 195, 296 F. 285; Fidelity & Deposit Co. v. Redfield, 9 Cir., 7 F.2d 800, loc. cit. 803. And the rule is just as rigid in Minnesota. Vogel v. D. M. Osborne & Co., 32 Minn. 167, 20 N.W. 129.

The strict rule in the use of pleadings as evidence doubtless has its root in the common law where all pleadings filed in other causes were excluded. Wigmore on Evidence, Volume IV, Section 1066, p. 54, Third Edition; Combs v. Hodge et al., 62 U.S. 397, loc. cit. 404, 21 How. 397, 16 L. Ed. 115.

It has even been held that an explicit admission by a party in another case only becomes competent against him if verified under oath. Berry v. Littlefield, Alvord & Co., 54 App.D.C. 195, 296 F. 285; Kentucky Rock Asphalt Co. v. Helburn, D.C., 20 F. Supp. 364.

It is immaterial that the proceeding was before a quasi-judicial tribunal.

The exhibits in this case did not purport to be signed by appellant but were signed by an insurance company, though using appellant's name. Moreover, the statements were hypothetical and conventional and could not be interpreted as an admission

(Wigmore on Evidence, supra), but, rather, should be interpreted as an express denial of the fact in issue.